**POSADAS de PUERTO RICO ASSOCIATES, INC., d/b/a Condado Plaza Hotel & Casino, Plaintiff, Appellant,**

v.

**ASOCIACION de EMPLEADOS de CASINO de PUERTO RICO, Defendant, Appellee.**

No. 88–1949.

United States Court of Appeals, First Circuit.

May 1, 1989.

Maria Milagros Soto, Condado, P.R., for plaintiff, appellant.

Jose E. Carreras Rovira, Rio Piedras, P.R., for defendant, appellee.

Before BREYER, TORRUELLA and SELYA, Circuit Judges.

SELYA, Circuit Judge.

This dispute arises out of a collective bargaining agreement (Agreement) between the corporation which operates the Condado Plaza Hotel & Casino (CPHC) and a labor union which represents certain of CPHC's staff. On May 12, 1987, an arbitrator ruled that CPHC had laid off two union members in violation of the Agreement's seniority provisions. Alleging that the decision exceeded the arbitrator's authority, CPHC brought suit in federal district court pursuant to section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, asking that the arbitral award be set aside. Its complaint was docketed on June 12, 1987 (31 days after the award was issued). The district court dismissed the action as time-barred. *Posadas de Puerto Rico Associates, Inc. v. Aso-ciacion de Empleados de Casino de Puerto Rico*, 689 F.Supp. 44, 47 (D.P.R.1988) (*Posadas II*). Plaintiff appeals.

## I

Section 301 extends federal jurisdiction to "[s]uits for violation of contracts between an employer and a labor organization," 29 U.S.C. § 185(a), but establishes no time limits. Courts are therefore required to " 'borrow' the most suitable statute or other rule of timeliness from some other source." *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 158, 103 S.Ct. 2281, 2287, 76 L.Ed.2d 476 (1983). In *Reed v. United Transportation Union*, — U.S. —, 109 S.Ct. 621, 625, 102 L.Ed.2d 665 (1989), the Supreme Court recently demonstrated how to choose a limitation period when the operative federal statute is silent. The framework limned by the *Reed* Court comports with that erected by this circuit in *Communications Workers of America v. Western Electric Co.*, 860 F.2d 1137, 1139 (1st Cir.1988). We rehearse the architecture of the selection process.

When Congress fails to furnish an express statute of limitations in connection with enforcement of a federal right, a court's initial look must be to state law to isolate the most closely analogous rule of timeliness. *Reed*, 109 S.Ct. at 625; *DelCostello*, 462 U.S. at 158, 103 S.Ct. at 2287; *Communications Workers*, 860 F.2d at 1139. But, as we have cautioned, "the glance in the direction of the state-law cupboard should not be an automatic or reflexive one." *Communications Workers*, 860 F.2d at 1139. State limitation periods may on occasion be "unsatisfactory vehicles for the enforcement of federal law," *DelCostello*, 462 U.S. at 161, 103 S.Ct. at 2289, and can frustrate or interfere with the implementation of federal policies. *Reed*, 109 S.Ct. at 625. When such dangers loom, a limitation period borrowed from elsewhere in federal law may be applied if "two preconditions are met: (1) some federal rule of limitations 'provides a closer analogy' than state alternatives, and (2) 'the federal poli-

cies at stake and the practicalities of litigation' render the federal rule more suitable." *Communications Workers*, 860 F.2d at 1139 (quoting *DelCostello*, 462 U.S. at 172, 103 S.Ct. at 2294–95). Before we switch from a state-law to a federal-law focus, however, the borrowed federal rule must seem, all things considered, "significantly more appropriate." *Reed*, 109 S.Ct. at 625; *DelCostello*, 462 U.S. at 172, 103 S.Ct. at 2294–95; *Communications Workers*, 860 F.2d at 1139.

## II

Although we have wrestled before with the generic problem, this case presents a new wrinkle. We have yet to pass upon the suitability of different temporal standards vis-a-vis actions to vacate arbitral awards. Nonetheless, we have confronted the problem in two areas which border upon the present one.

In *Communications Workers*, we applied the 6–month limitation period from section 10(b) of the National Labor Relations Act (NLRA), 29 U.S.C. § 160(b), to a union's efforts to compel management to arbitrate. We resisted the union's suggestion to borrow the state's 6–year statute of limitations for contract actions. Our choice was informed by a desire to preserve "the relatively rapid final resolution of labor disputes favored by federal law," *Communications Workers*, 860 F.2d at 1141–42 (quoting *DelCostello*, 462 U.S. at 168, 103 S.Ct. at 2292), which led us to conclude that the arbitral process should not be "suspended in limbo for long periods." *Id.* at 1142 (quoting *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 64, 101 S.Ct. 1559, 1564–65, 67 L.Ed.2d 732 (1981)). Six years, we decided, was "simply too long to allow industrial disputes to fester." *Id.* (quoting *Associated Brick Mason Contractors v. Harrington*, 820 F.2d 31, 37 (2d Cir.1987)). As we stated:

> The objectives of federal labor policy require not only that arbitration be invoked

when and as contracted for—but that it be invoked swiftly as well.

*Communications Workers*, 860 F.2d at 1141.

In *Derwin v. General Dynamics Corp.*, 719 F.2d 484 (1st Cir.1983), plaintiff sought to confirm an arbitrator's award issued three years earlier. *Id.* at 486. Since Massachusetts set a strict 30–day deadline on challenges to arbitration outcomes, we reasoned that delay in seeking judicial confirmation could not "threaten the finality of arbitral awards." *Id.* at 489–90. We thus felt free to borrow a state limitation period exceeding three years,[1] and permitted the action to proceed. *Id.* at 490.

Although the bottom line was different in these two cases—we borrowed from a federal source in *Communications Workers* and from state law in *Derwin*—our basic approach did not vary. In each instance, we examined the nature of the action, the best and closest analogy which state law could furnish, and the contents of the federal-law cupboard. Then, viewing the results of that canvass in light of the underlying policies of federal labor law and the realities of the adversary process, we asked which alternative best promoted industrial harmony and the integrity of labor-management relations.

## III

Following this protocol, we begin by isolating the Commonwealth's most nearly analogous rule of timeliness. The district judge determined that local law established a 30–day limitation period on suits to vacate arbitral awards. *See Posadas II*, 689 F.Supp. at 45; *see also Posadas de Puerto Rico Associates v. Asociacion de Empleados de Casino de Puerto Rico*, 648 F.Supp. 879, 883 (D.P.R.1986) (*Posadas I*) (applying 30–day statute in suit to vacate different arbitration award between same parties), *aff'd*, 821 F.2d 60 (1st Cir.1987) (on merits). In reaching this conclusion, the judge relied upon the Puerto Rico Supreme Court's decision in *Union de la Industria Licorera de*

---

1. We did not need to decide, and left open, exactly which state standard should be borrowed. *Derwin*, 719 F.2d at 490 n. 6.

*Ponce v. Destileria Serralles, Inc.*, 116 D.P.R. 348 (1985). In *Serralles*, confronted with a union's action to vacate the decision of a labor arbitrator and no meaningful legislative standard, the court constructed a comprehensive set of rules to "lay down the procedure to be followed in this type of situation." Official Translation at 5. This construct included the directive that, "[i]f the collective bargaining agreement does not establish a term within which the parties should resort to the judicial forum in order to challenge an [arbitral] award, the parties will have thirty (30) days to do so." *Id.* at 7 n. 4.

We believe, as did the court below, that *Serralles* offers the closest state-law analog to the instant case. The 30–day prescriptive period was designed, after all, to govern situations not merely similar but identical to the one at bar. To be sure, appellant maintains that the quoted passage is but a dictum. Yet the passage, if dictum at all, is nonetheless considered dicta, clear and explicit in its import. Because we are bound to accept the interpretation of Puerto Rican law propounded by the Commonwealth's highest tribunal, we believe the *Serralles* formulation must be treated deferentially.

CPHC's fallback position is that the Puerto Rico Supreme Court overruled *Serralles* sub silentio in *Torres Solano v. Puerto Rico Telephone Co.*, 87 J.T.S. 3 (1987). That proposition is simply wrong. *Torres Solano* applied the doctrine of laches to actions seeking judicial review of certain administrative decisions. Official Translation at 6. It did not purport to extend to suits for vacation of labor arbitration awards. Rather, the suggestion that actions to vacate arbitrators' decisions resemble appeals from administrative rulings finds its provenance in *Serralles*, where the court immediately qualified that comparison by delineating an explicit 30–day time limit pertaining to the former. *Serralles*, Official Translation at 7 & n. 4. This same reasoning, of course, disposes of

appellant's further proffer that perhaps laches—which before February 1989 governed the timeliness of many administrative appeals [2]—might be considered as the most appropriate guidance to be derived from local law. When the Commonwealth's highest tribunal custom tailors a rule of decision to suit an idiosyncratic sort of case, it ill behooves a federal court, in the guise of searching out a state-law analogy, to rummage through a collection of looser-fitting garments.

Given the specifics of *Serralles*, the Commonwealth's 30–day prescriptive period constitutes the point of departure for purposes of our analysis. We turn, therefore, to the question of whether some federal rule would be "significantly more appropriate."

### IV

Two items on the shelves of the federal-law cupboard might conceivably trump the *Serralles* deadline. We identify the contenders.

1. *The United States Arbitration Act (USAA).* Although the USAA, by its terms, is inapplicable to most labor contracts, *see* 9 U.S.C. § 1, "federal courts have often looked to the [USAA] for guidance in labor arbitration cases" brought pursuant to section 301. *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 108 S.Ct. 364, 372 n. 9, 108 S.Ct. 364 (1987); *cf. Derwin*, 719 F.2d at 488 & n. 3. The USAA establishes a 3–month limitation period for motions to vacate or modify arbitral judgments. 9 U.S.C. § 12. And the USAA comes well-recommended; two of our sister circuits have borrowed the 3–month proviso for use in suits to vacate arbitrators' awards. *See Occidental Chemical Corp. v. Int'l Chemical Workers Union*, 853 F.2d 1310, 1316 (6th Cir.1988); *American Postal Workers Union v. United States Postal Service*, 823 F.2d 466, 476 (11th Cir.1987); *cf. Bacashi-*

**2.** Subsequent to the events at issue in this case, the Commonwealth adopted a version of the Uniform Administrative Procedure Act, Act No. 170 (Aug. 12, 1988), which took effect in February 1989. That statute sets a 30–day deadline for the prosecution of suits seeking judicial review of administrative rulings. *Id.* at § 4.2.

*hua v. United States Postal Service,* 859 F.2d 402, 406 (6th Cir.1988) (borrowing USAA deadline in action for modification of labor arbitrator's decision).

2. *Section 10(b).* In *DelCostello,* the Court decided that hybrid § 301/fair representation cases[3] were most appropriately controlled by the NLRA's 6–month statute of limitation, 29 U.S.C. § 160(b), originally designed to govern complaints of unfair labor practices. Other federal courts—this one included—have applied the 6–month period in a variety of related contexts. *See, e.g., Communications Workers,* 860 F.2d at 1140–44. One sister circuit, at least, has applied section 10(b) to a section 301 suit to vacate an arbitration award. *See Abernathy v. United States Postal Service,* 740 F.2d 612, 616 (8th Cir.1984).[4] In Puerto Rico, two different judges of the federal district court have applied the 6–month statute to straightforward vacation suits not involving claims of unfair representation. *See Hilton Int'l Co. v. Union de Trabajadores de la Industria Gastronomica de Puerto Rico, Local 610,* 652 F.Supp. 1259, 1265 (D.P.R.), *aff'd,* 833 F.2d 10 (1st Cir.1987) (without deciding appropriate limitation period); *Union de Tronquistas de Puerto Rico, Local 901 v. Emery Air Freight Corp.,* 596 F.Supp. 829, 832 (D.P.R.1984).

## V

Having considered the suggested federal-law alternatives, we agree with the district court that Puerto Rico's judicially-created time bar for vacating labor arbitration awards (30 days) is "most closely analogous" to the case before us and that, giving due weight to national labor law objectives, its federal-law competitors cannot be deemed "significantly more appropriate." *Reed,* 109 S.Ct. at 625; *DelCostello,* 462 U.S. at 158, at 172, 103 S.Ct. at 2294–95;

*Communications Workers,* 860 F.2d at 1139.

As we see things, the *Serralles* standard jibes nicely with, and enhances, the underlying advantages of arbitration. Its brief window of opportunity abets the speedy adjudication of workplace grievances, promoting both the smooth operation of efficient mechanisms for private dispute resolution established in collective bargaining agreements and the federal interest in industrial stability. It may certainly be argued that the available federal-law alternatives are in some respects marginally superior to the Commonwealth's chosen period —but in other respects, the alternatives seem clearly inferior. If the best that can be said is that an available federal-law analog is somewhat different than, but roughly equal in overall value to, the Commonwealth's 30–day rule, that is not enough. Unless we can say that some federal surrogate is "significantly more appropriate" than the 30–day rule, we should borrow from the state-law cupboard. *Reed,* 109 S.Ct. at 625; *DelCostello,* 462 U.S. at 172, 103 S.Ct. at 2294–95; *Communications Workers,* 860 F.2d at 1139. When compared to the Commonwealth's standard, neither of the nominated federal-law candidates holds out such great promise. The point is made manifest when one cross-compares the possibilities.

1. *Thirty Days/Six Months.* This comparison need not occupy us for long. A 30–day deadline is not unusually brief for suits of this type. The Railway Labor Act, for example, renders awards of an arbitration board final and conclusive a mere 10 days after filing. *See* 45 U.S.C. § 159. State statutes "typically provide very short times in which to sue for vacation of arbitration awards." *DelCostello,* 462 U.S. at 166, 103 S.Ct. at 2291 (footnote omitted). On the other hand, a 6–month period would be grossly anomalous if applied to vacation

---

**3.** *See, e.g., Arriaga–Zayas v. Int'l Ladies' Garment Workers' Union,* 835 F.2d 11, 12 (1st Cir. 1987) (describing elements of "classic hybrid § 301/unfair representation amalgam"), *cert. denied,* —— U.S. ——, 108 S.Ct. 2016, 100 L.Ed. 2d 604 (1988).

**4.** We think it noteworthy that the *Abernathy* panel treated the action as being a hybrid suit in substance, 740 F.2d at 616, because the collective bargaining agreement precluded an employee challenge to an arbitral award absent a corollary claim of inadequate union representation. No such symbiosis exists in the instant case.

actions, allowing more than twice the lead time vouchsafed by nearly all the states.[5] There is no reason to choose the section 10(b) alternation.

2. *Thirty Days/Ninety Days.* A 90–day limitation period, such as is contained in the USAA, is certainly more suitable than a 6–month period. It closely approximates a temporal posture assumed by several jurisdictions. *See, e.g., Champion Int'l Corp. v. United Paperworkers Int'l Union,* 779 F.2d 328, 334 (6th Cir.1985) (borrowing 90–day Tennessee statute of limitations in action to vacate); *Plumbers' Pension Fund, Local 130 v. Domas Mechanical Contractors, Inc.,* 778 F.2d 1266, 1270 (7th Cir.1985) (applying 90–day limit prescribed in Illinois statute to attack on validity of arbitration award); *see also* Unif. Arbitration Act § 12(b), 7 U.L.A. 140 (1985). But, though 90 days may be a perfectly appropriate period, we cannot say that it is "significantly" more appropriate than 30 days.

Where, as here, state law allows parties 30 days or less to move to vacate arbitrators' rulings, federal courts have unhesitatingly employed the local standard. *See, e.g., United Brotherhood of Carpenters and Joiners v. FMC Corp.,* 724 F.2d 815, 817 (9th Cir.1984) (borrowing Oregon's 20–day limitation for suit to vacate arbitration award); *Fedor v. Hygrade Food Products Corp.,* 687 F.2d 8, 9 (3d Cir.1982) (per curiam) (applying Pennsylvania's 30–day statute of limitations in respect to application to vacate arbitration award); *Sine v. Local No. 992 International brotherhood of Teamsters,* 644 F.2d 997, 1002 (4th Cir.) (utilizing Maryland's 30–day limitation period for action to vacate arbitral judgment), *cert. denied,* 454 U.S. 965, 102 S.Ct. 507, 70 L.Ed.2d 381 (1981). This practice, well-advised from the start, has been strengthened by the recent directive that we "take seriously [the Court's] admonition that analogous state statutes of limitations are to be used unless they frustrate or signifi-

cantly interfere with federal policies." *Reed,* 109 S.Ct. at 627.

Notably, no court of appeals has adopted the USAA's statutory period because it viewed the most analogous state-law deadline as too *short.* Two cases, however, warrant brief explanation. In *Occidental Chemical,* the Sixth Circuit held Michigan's 21–day statutory deadline inappropriate not because it provided too restrictive a window, but solely because the state act expressly excluded labor contracts from its purview. 853 F.2d at 1315. The Eleventh Circuit in *American Postal Workers* chose the USAA's provision over Florida's 90–day rule out of a belief that a consistent federal standard would promote uniformity in labor law. 823 F.2d at 474. But, *American Postal Workers* antedated *Reed,* and the Court's reiteration of the presumptive primacy of analogous state limitation periods, 109 S.Ct. at 627, seems to scuttle the idea of an esemplastic national rule.

Once states have established a standard of promptness, we think that considerations of uniformity support its application in a federal forum. Given that Puerto Rico's rule of timeliness for vacation actions coincides so neatly with the principles underlying federal labor law, there is no sound reason why the district court's time limit should be 300% longer than the Commonwealth's deadline for taking what amounts to the same action. To be sure, intrastate uniformity will breed interstate disparities—but such disparities are inevitable as long as (1) state courts assert jurisdiction over challenges to arbitration awards, and (2) the Court continues to instruct that federal courts "look first to the [state's] cupboard...." *Communications Workers,* 860 F.2d at 1139; *see also Reed,* 109 S.Ct. at 625–27; *DelCostello,* 462 U.S. at 158, 172, 103 S.Ct. at 2294–95. We disagree, then, with the Eleventh Circuit's suggestion that the USAA might serve as a single national benchmark in this area. *See American Postal Workers Union,* 823 F.2d at 474. One way or the other, state

---

**5.** The *DelCostello* Court reported that six states have attached 30–day expiration periods to the right to challenge arbitration; five others require filing within even shorter spans (two of

which allow only 10 days); and only two states permit parties to wait longer than three months before suing to vacate arbitration decisions. 462 U.S. at 166 n. 15, 103 S.Ct. at 2291 n. 15.

limitation periods are likely to be applied—and state laws are far from uniform. *See DelCostello,* 462 U.S. at 166 n. 15, 103 S.Ct. at 2291 n. 15. To discourage forum-shopping and promote procedural simplicity, we think it wise to ensure that a single rule of timeliness obtains within a single jurisdiction for labor/management challenges to arbitral results, so long as the salutary objectives of federal labor law are not thereby disserved.

We are unpersuaded by appellant's plea that the necessity of translating Spanish documents into English warrants a more protracted interval within which to sue in Puerto Rico's federal courts. For one thing, in a myriad of cases where the Commonwealth's law of proscription establishes the rule of decision, *e.g. Rivera–Gomez v. de Castro,* 843 F.2d 631, 632 (1st Cir.1988) (one-year statute of limitations under P.R. Laws Ann. tit. 31, § 5298(2) governs action brought under 42 U.S.C. § 1983), filing deadlines are not extended because the plaintiff elects a federal venue. For another thing, translations can be made after the fact; verbatim transcripts and elaborate documentation are unnecessary for the filing of a complaint, which under the Civil Rules ought only to contain a "short and plain statement" of the claim. Fed.R.Civ. P. 8(a). Moreover, a district court's review of the results of a labor arbitration is "very limited." *United Steelworkers v. American Mfg. Co.,* 363 U.S. 564, 567, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960). "[C]ourts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract." *Misco,* 108 S.Ct. at 370. The circumscribed nature of the proceedings available before the district court supports the conclusion that assembly of an English-language record poses no insurmountable obstacle.[6]

## VI

Appellant insists that the Court, in *Del-Costello,* saw fit not to borrow from state law. That is true, but somewhat beside the point. What counts is that in *DelCostello* the Court employed the same selection criteria which we have discussed; the agglomeration of relevant factors *in that case* dictated borrowing a federal-law analog. Some of the state-law options were overlong and "suffer[ed] from flaws ... of practical application in view of the policies of federal labor law and the practicalities of hybrid § 301/fair representation litigation." *DelCostello,* 462 U.S. at 165, 103 S.Ct. at 2291. Although a 30–day period was also considered, the Court took pains to reject it *only* for hybrid actions. The Court never suggested that such abbreviated deadlines would be inappropriate in actions to vacate arbitrators' awards (the very context for which they were designed). *Id.* at 166 & n. 16, 103 S.Ct. at 2291–92. It is not surprising that different limitation periods may apply to different types of section 301 suits; section 301, as we have said, "is not monolithic." *Communications Workers,* 860 F.2d at 1143.

We note, as well, that a crucial factor favoring a longer commencement period in *DelCostello* is absent here. Both CPHC and the union are experienced litigants; neither could fairly be called "unsophisticated in collective-bargaining matters," *DelCostello,* 462 U.S. at 166, 103 S.Ct. at 2291–92. This is generally the case in straightforward challenges to arbitration awards: typically, the plaintiff will be either a union or an employer, both of which enjoy legal counsel and can fairly be described as "knowledgeable, resourceful, and diligent" in pressing their concerns. *Communications Workers,* 860 F.2d at 1142. The grievance and arbitration process becomes a familiar exercise for labor and management alike. Where the dispute is of a routine nature, and no party has been "cut adrift" by its representative in the grievance process, *id.,* we see no reason to allow more than 30 days to commence suit. *Accord United Brotherhood of Carpenters and Joiners,* 724 F.2d at 817 (factors favoring longer limitation period in

---

6. We find it interesting that, in the present case, CPHC makes no allegation that the need to procure a translated record was responsible for the delay in the filing of its complaint.

*DelCostello* do not exist where union seeks to set aside arbitral award).

Nor would resort to a 30–day rule be inconsistent with our opinion in *Derwin, supra.* There, we chose a lengthy time frame for institution of suit by looking to state law—but we did so only for a certain species of section 301 action, confirmation of an arbitrator's award. Our opinion adverted to a crucial distinction between actions to *confirm* and actions to *vacate:* only the latter "threaten the finality of arbitral awards." 719 F.2d at 489–90. As the Eleventh Circuit has explained, "[w]hatever the merits of a longer statute of limitations for suits to confirm ... the application of such a lengthy period to suits to vacate arbitration awards would seriously undermine the finality of arbitration and the rapid resolution of disputes under collective bargaining agreements." *American Postal Workers,* 823 F.2d at 474 (footnote omitted). *Accord Communications Workers,* 860 F.2d at 1143–44; *Occidental Chemical,* 853 F.2d at 1314. There is no inconsistency whatever between *Derwin* and our decision today.[7]

### VII

To recapitulate briefly, Puerto Rico has set a 30–day period within which labor and management must institute suits to overturn arbitral awards. This rule furnishes more than a state-law comparison; it is crafted to apply specifically to situations exactly like this one. No federal-law alternative could possibly "provide[ ] a closer analogy." *DelCostello,* 462 U.S. at 172, 103 S.Ct. at 2294–95. Nor is the Commonwealth's rule rooted in soil anathematic to the "federal policies at stake and the practicalities of litigation." *Id.* The 30–day period promotes stability in the workplace and serves the cardinal objectives of federal labor policy by requiring that parties fish or cut bait within a reasonable time. And, it is not impractical. The suggested federal-law alternatives do not seem to be more appropriate; certainly, they are not "significantly" more appropriate.

We need go no further. In this instance, there is no warrant to depart from the state-law analog. Faithful adherence to the Court's teachings requires that the 30–day limitation period stipulated by Puerto Rico law must prevail.[8] Because the district court correctly concluded that appellant's suit was not timeous, the judgment below must be

*Affirmed.*

---

7. Indeed, in *Derwin* we gave implicit approval to the use of a 30–day proscription period under Massachusetts law for suits to vacate arbitral awards. *See Derwin,* 719 F.2d at 489.

8. There is no inequity in applying this rule to appellant. It was on fair notice of the potential jeopardy; after. all, the district court had dismissed an earlier suit brought by CPHC in 1985 on exactly the same basis. *See Posadas I,* 648 F.Supp. at 883–84.