William L. PATTERSON, Appellant,

v.

STATE of Alaska, DEPARTMENT OF AGRICULTURE, Individually and Severally; Matanuska Maid, Inc., Individually and Severally; and its agents John Seawell, Ron Wilde, Steve Bevins and Joe Van Treeck, Individually and Severally, Appellees.

No. S–4125.

Supreme Court of Alaska.

Aug. 5, 1994.

Rehearing Denied Sept. 1, 1994.

A. Lee Petersen, Law Offices of A. Lee Petersen, P.C., Anchorage, for appellant.

Parry Grover, James H. Juliussen, and Davis Wright Tremaine, Anchorage, for appellees Matanuska Maid, John Seawell, Ron Wilde, Steven Bevins, and Joe Van Treeck.

Kevin Saxby, Asst. Atty. Gen., Anchorage, and Charles E. Cole, Atty. Gen., Juneau, for appellee State of Alaska.

Before MOORE, C.J., and RABINOWITZ, MATTHEWS and COMPTON, JJ.

RABINOWITZ, Justice.

## I. INTRODUCTION

William Patterson initially sued Matanuska Maid and its agents (Mat–Maid) for defamation. Patterson then filed a second lawsuit against the State of Alaska, Department of Agriculture (State) and Mat–Maid for wrongful termination. Patterson now appeals from the superior court's grant of summary judgment in favor of the State and Mat–Maid on both claims.

## II. FACTS AND PROCEEDINGS

Patterson had been employed by Mat–Maid for seven and one-half years, during which time the company came under new management. Mat–Maid had experienced financial difficulties, and the federal bankruptcy court ordered reorganization. The bankruptcy court authorized the State to operate the company, and a new managing agent, John Seawell, was appointed in November 1984.

Patterson was involved in an accident with a company truck in June 1985. He was reprimanded, and a corrective action report was placed in his file. This incident, coupled with the change in management and Patterson's problems associated with post-traumatic stress disorder,[1] appear to have triggered a series of absences from work, customer complaints about Patterson, and reprimands regarding his performance of routine duties. Mat–Maid took no formal disciplinary action against Patterson for any of these reported incidents.

Starting in April 1986, a collective bargaining agreement between Mat–Maid and Teamsters Local 959 controlled Patterson's terms of employment.[2] The agreement required "just cause" for termination of employment and also contained mandatory grievance and arbitration procedures.[3]

On February 6, 1986, Steve Bevins, Patterson's immediate supervisor, wrote a letter to the secretary-treasurer of Local 959, Robert J. Sinnett, asserting misconduct by Patterson. Bevins alleged that Patterson tried to poison him and that Patterson was calling his home making obscene remarks to his spouse. The letter also said that Patterson made obscene calls to other employees, and that Bevins was concerned about Patterson's stability and performance. Essentially, the letter asked Local 959 to intervene and attempt to straighten out the situation, and stated that if problems with Patterson's behavior continued, he would be fired.

Patterson was subsequently involved in a second automobile accident on April 30, 1986. At the time of the accident Patterson had detoured without permission from his delivery route. He drove to the Teamsters Building in an attempt to gain Sinnett's permission to attend a meeting between Local 959 and Mat–Maid. As he left the parking lot a pick-up truck collided with the rear of his delivery truck. Patterson was terminated for cause that same day.

Patterson subsequently filed a termination grievance, which Local 959 took to arbitration on his behalf. An arbitration hearing was held and on July 2, 1986, the arbitrator rendered a decision and award in favor of Mat–Maid. Neither Patterson nor Local 959 appealed from the arbitration decision.

On February 5, 1988, Patterson filed a pro se tort action for defamation against Mat–Maid. On May 2, 1988, Patterson filed a second lawsuit for wrongful termination against Mat–Maid, Local 959 and its officers, and the arbitrator. Both actions were based on the conduct of Mat–Maid and Local 959 during Patterson's employment and the subsequent grievance proceedings. According to Patterson's complaint, the arbitrator "admitt[ed] unsubstantiated, irrelevant, and grossly hearsay evidence," sustained Patterson's termination on grounds other than those charged, "overstepp[ed] his bounds," and "ignor[ed] his duty as an impartial judge." The two cases were subsequently consolidated by superior court order. On February 6, 1989, Patterson filed a document titled "Addition to Plaintiff's List of Defendants in Above Mentioned Cases," in which for the first time he named the State as a

---

1. Patterson is a Vietnam veteran who has been diagnosed as suffering from post-traumatic stress disorder. His psychotherapist states that as a result of his war experiences Patterson has "experienced a great deal of problems in his relationships with supervisors in his work over the years." It appears that after the change in management "the relationship between Mr. Patterson and his supervisors became very adversarial."

2. Before the collective bargaining agreement went into effect, Mat–Maid looked to an employer-implemented last offer agreement, which Local 959 had never endorsed, to govern relations with employees.

3. The agreement specified that the procedures therein would be "the sole means of resolving disputes, complaints, or grievances." Under these procedures, arbitration would be a last resort.

defendant in the now consolidated lawsuits. The State and Mat–Maid thereafter filed separate summary judgment motions.

The superior court granted summary judgment in favor of the State in May 1989, on the grounds that Patterson had not named the State as a party until after the statute of limitations for wrongful discharge and defamation had run. The superior court also held that Patterson's claim against the State did not relate back to the date of his original complaints, *see* Alaska R.Civ.P. 15(c), because he was not mistaken as to the identity of the proper party.[4]

■ Without comment, the superior court granted summary judgment in favor of Mat–Maid in June 1989. The court entered final judgment in favor of Mat–Maid on August 10, 1989. Now represented by counsel, Patterson appeals from the grants of summary judgment to the State and Mat–Maid.[5]

## III. DISCUSSION

### A. Standard of Review

"When reviewing an appeal from summary judgment, we determine whether there was a genuine issue of material fact before the trial court, and whether the moving party was entitled to judgment on the law applicable to the established facts." *Crissey v. Alaska USA Fed. Credit Union,* 811 P.2d 1057, 1059 (Alaska 1991).

### B. Patterson's Wrongful Termination Claim and the Applicable Period of Limitations

■ An arbitrator's decision can only be challenged in two ways: (1) collaterally in an action alleging breach of contract against an employer and breach of the duty of fair representation against a union; or (2) directly through an action to vacate the award. *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 570, 96 S.Ct. 1048, 1059, 47 L.Ed.2d 231 (1976); *see also Sine v. Local No. 992 Int'l Bhd. of Teamsters,* 644 F.2d 997 (4th Cir.) (addressing and analyzing both employee's direct challenge to arbitrator's decision and employee's claim for union's breach of duty), *cert. denied,* 454 U.S. 965, 102 S.Ct. 507, 70 L.Ed.2d 381 (1981). We turn first to the issues pertaining to Patterson's collateral attack on the arbitrator's decision.

### 1. The Applicable Limitations Period for § 301 Hybrid Claims

■ Patterson attempts to characterize his May 2, 1988 wrongful termination suit as a hybrid action that federal law authorizes when a labor union breaches its duty to fairly represent an employee in arbitration proceedings. *See DelCostello v. International Bhd. of Teamsters,* 462 U.S. 151, 164–65, 103 S.Ct. 2281, 2290–91, 76 L.Ed.2d 476 (1983). Brought under § 301 of the Labor Manage-

---

**4.** All claims against Local 959's officers were dismissed by superior court order in August 1988. The superior court on that date also ordered a stay of proceedings against Local 959 pursuant to the United States Bankruptcy Code, 11 U.S.C. § 362. In September, the superior court additionally dismissed all claims against the arbitrator.

**5.** In *Patterson v. State,* Mem.Op. & J. No. 0642 (Alaska, Nov. 4, 1992), this court granted Patterson leave to file a late appeal from the superior court's final judgment of August 10, 1989. The State now contends that because Patterson did not explicitly appeal the superior court's May 1, 1989 grant of summary judgment to the State, he cannot challenge that judgment here. The superior court's judgment was titled "Order Granting Final Summary Judgment," and the State now characterizes this determination as a proper final judgment.

The State is mistaken. If an action involves multiple claims or multiple parties, and some claims are adjudicated before others, then no appeal may be taken until the court has disposed of the entire case on all substantive issues, except as provided under Alaska Civil Rule 54(b). *See Johnson v. State,* 577 P.2d 706, 709–10 (Alaska 1978). Rule 54(b) allows the entry of final judgment "as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." The superior court's order of May 1, 1989 contained no such explicit findings.

Therefore, no appeals could occur until final disposition of the action on August 10, 1989, with the entry of final judgment as to Mat–Maid. The time for filing an appeal on any of Patterson's claims started at that time. Under these circumstances, we read our grant of permission to file a late appeal as an extension of the time to appeal all claims. Whether Patterson mentioned the judgment of May 1, 1989 in his motion to file a late appeal is not a relevant consideration.

ment Relations Act, 29 U.S.C. § 185,[6] this action is both a suit against the employer for breach of a collective bargaining agreement, and a suit against the union for breach of the duty of fair representation. *DelCostello*, 462 U.S. at 164–65, 103 S.Ct. at 2290–91; *see also Vaca v. Sipes*, 386 U.S. 171, 186–87, 87 S.Ct. 903, 914–15, 17 L.Ed.2d 842 (1967). State courts have concurrent jurisdiction to hear a collective bargaining suit presenting § 301 hybrid claims. *Vaca*, 386 U.S. at 186–87, 87 S.Ct. at 914–15. *See generally* John P. Ludington, Annotation, *State Court Jurisdiction as Pre-empted by National Labor Relations Act as Amended (29 U.S.C.S. §§ 141 et seq.)—Supreme Court Cases*, 75 L.Ed.2d 988, 1012–13 (1985) (discussing lack of pre-emption in § 301 cases). However, state courts must apply federal substantive law in adjudicating § 301 actions.[7] We conclude that Patterson's action is a § 301 action even though he seeks to vindicate "uniquely personal" rights related to his claim for wrongful discharge. *See Hines*, 424 U.S. at 562, 96 S.Ct. at 1055.

■ As a threshold issue, both Mat–Maid and the State contend that Patterson raises § 301 claims for the first time on appeal and that this court should decline to hear Patterson's arguments. The record indicates that Patterson indeed failed to make a § 301 argument to the superior court.

The State and Mat–Maid presented separate defenses before the superior court, and do not present a common defense on appeal. In the proceedings below, the State responded to Patterson's wrongful discharge and defamation claims without discussing any aspect of federal labor law. However, in its memorandum in support of its summary judgment motion, Mat–Maid raised several arguments concerning the applicability of § 301 to Patterson's claims. Thus § 301 issues were before the superior court.[8]

■ The statute of limitations for hybrid § 301 claims is six months. *DelCostello*, 462 U.S. at 170–72, 103 S.Ct. at 2294–95.[9] How-

**6.** This statute states in part:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

**7.** The U.S. Supreme Court requires application of federal law alone in order to ensure uniform interpretation of collective bargaining agreements and to promote the peaceful and consistent resolution of disputes between labor and management:

The dimensions of § 301 require the conclusion that substantive principles of federal labor law must be paramount in the area covered by the statute. Comprehensiveness is inherent in the process by which the law is to be formulated ... requiring issues raised in suits of a kind covered by § 301 to be decided according to the precepts of federal labor policy.

More important, the subject matter of § 301(a) "is peculiarly one that calls for uniform law." The possibility that individual contract terms might have different meanings under state and federal law would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements.... Indeed, the existence of possibly conflicting legal concepts might substantially impede the parties' willingness to agree to

contract terms providing for final arbitral or judicial resolution of disputes.

... The ordering and adjusting of competing interests through a process of free and voluntary collective bargaining is the keystone of the federal scheme to promote industrial peace. State law which frustrates the effort of Congress to stimulate the smooth functioning of that process thus strikes at the very core of federal labor policy.... [W]e cannot but conclude that in enacting § 301 Congress intended doctrines of federal labor law uniformly to prevail over inconsistent local rules. *Local 174, Teamsters of Amer. v. Lucas Flour Co.*, 369 U.S. 95, 103–04, 82 S.Ct. 571, 576–77, 7 L.Ed.2d 593 (1962) (citations omitted); *accord Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 403 & n. 2, 108 S.Ct. 1877, 1880 n. 2, 100 L.Ed.2d 410 (1988). *See generally* 2 The Developing Labor Law 1556–59 (Charles J. Morris ed., 2d ed. 1988) (discussing applicability of preemption doctrine to fair representation cases under § 301).

**8.** Patterson's § 301 claim against the State is meritless. As used in the Labor Management Relations Act, the term "employer" does not include states or their political subdivisions. 29 U.S.C. § 152(2).

**9.** *DelCostello* borrowed the statute of limitations for making charges of unfair labor practices to the National Labor Relations Board. *See* 29 U.S.C. § 160(b); *DelCostello*, 462 U.S. at 169, 103 S.Ct. at 2293.

ever, the statute of limitations begins to run not on the date of the arbitrator's decision but on the date that the employee learns of the arbitrator's decision. *Galindo v. Stoody Co.,* 793 F.2d 1502, 1509 (9th Cir.1986).[10] Patterson contends that Mat–Maid never established in the record the exact date on which he became aware of the decision, and that thus a genuine issue of material fact exists that precludes summary judgment.

■ Patterson, however, does not produce evidence that establishes a specific date from which the limitation period should run.[11] Moreover, contrary to Patterson's allegations, Mat–Maid in fact specified a date when the limitations period started to run. In its memorandum in support of its summary judgment motion, Mat–Maid contended that the statute of limitations started to run no later than July 2, 1986, the date of the arbitrator's decision.

Further, the record indicates that Patterson knew or should have known of the arbitrator's decision no later than July 21, 1986. On July 21, 1986 Mat–Maid appealed a decision by an Employment Security Division hearing officer that Patterson was entitled to unemployment compensation from May 4, 1986. The Commissioner of Labor based his decision only on the evidence presented to the hearing officer. That evidence included the *arbitrator's award* upholding Patterson's discharge. Because Patterson participated in that unemployment compensation proceeding, he must have known of the arbitrator's decision by the time of Mat–Maid's appeal on July 21, 1986. Furthermore, Patterson's counsel "assumes" that Patterson may have learned of the arbitrator's decision on or about July 7, 1986.

Patterson filed his complaint for defamation on February 5, 1988 and his wrongful termination claim May 2, 1988, both over one and one-half years after the July 2, 1986 arbitration award. We therefore conclude that Patterson's § 301 suit for wrongful termination is time barred, since it was not brought within six months of the time Patterson knew or should have learned of the arbitrator's July 2, 1986 decision.

■ Patterson also claims that the applicable limitation period should have been equitably tolled while he pursued quasi-judicial relief. Patterson filed a complaint with the U.S. Department of Labor on January 16, 1987. Patterson contends that if he learned of the arbitrator's decision on or around July 7, 1986 and then filed his complaint with the Department of Labor within six months of that date, then a genuine issue of fact exists as to whether the applicable limitations period was tolled.

In countering Patterson's argument, Mat–Maid relies on *Harris v. Alumax Mill Products, Inc.,* 897 F.2d 400, 404 (9th Cir.), *cert. denied,* 498 U.S. 835, 111 S.Ct. 102, 112 L.Ed.2d 73 (1990), where the court cited authority to the effect that an employee's § 301 claim is not tolled by virtue of the filing of a worker's compensation claim. The Ninth Circuit concluded "that to allow tolling when the filing of an NLRB claim was merely optional would 'frustrate the national policy of prompt resolution of labor disputes.' " *Id.* (quoting *Conley v. International Bhd. of Elec. Workers,* 810 F.2d 913, 916 (9th Cir. 1987)).

■ The *Harris* court stated that " '[e]quitable tolling is most appropriate when the plaintiff is *required* to avail himself of an alternate course of action as a precondi-

---

**10.** The *Galindo* court said that "in a duty of fair representation case, the six-month period generally begins to run when an employee knows or should know of the alleged breach of duty of fair representation by a union." *Id.*

Similarly, where a duty of fair representation suit seeks to overturn an unfavorable arbitration award on the ground that the union committed errors in the arbitration proceedings, the claim accrues when the employee learns of the arbitrator's award.
*Id.*

**11.** See *Bauman v. State, Div. of Family & Youth Servs.,* 768 P.2d 1097, 1099 (Alaska 1989) ("Once the movant has met that initial burden [establishing the absence of genuine issues of material fact], 'the non-movant is required, in order to prevent summary judgment, to set forth specific facts showing that he could produce evidence reasonably tending to dispute or contradict the movant's evidence and thus demonstrate that a material issue of fact exists.' ") (quoting *State, Dep't of Highways v. Green,* 586 P.2d 595, 606 n. 32 (Alaska 1978)).

tion to filing suit.' " *Id.* (quoting *Conley,* 810 F.2d at 916). Additionally, *Harris* relies on the reasoning of the U.S. Supreme Court regarding the tolling of a statute of limitations by the filing of an optional claim, stating that "[t]he Court has made it clear that it is reluctant to invoke tolling where a plaintiff is tardy in pursuing a parallel avenue of relief." *Id.* (citing *International Union of Elec., Radio, & Mach. Workers, Local 790 v. Robbins & Myers, Inc.,* 429 U.S. 229, 236–40, 97 S.Ct. 441, 446–49, 50 L.Ed.2d 427 (1976)). We conclude that Patterson's filing of a claim with the U.S. Department of Labor was not a precondition to the filing of his § 301 suit against Mat–Maid, and that the applicable six-month limitation period was not tolled by the filing of that claim.[12]

2. *Applicable Limitations Period for a Direct Attack on the Arbitrator's July 2, 1986 Award*

 Because his suit concerns the alleged violation of a contract between an employer and a labor organization, Patterson's direct challenge to the arbitrator's decision, like his claims against Mat–Maid and Local 959, falls under § 301, and state courts thus must apply federal law. *See United Steelworkers of Amer. v. Northwest Steel Rolling Mills, Inc.,* 324 F.2d 479, 481 & n. 2 (9th Cir.1963) (addressing action to enforce arbi-

tration award); *Safeway Stores v. Brotherhood of Teamsters Local No. 70,* 83 Cal. App.3d 430, 147 Cal.Rptr. 835, 838 (1978) (addressing action to vacate arbitration award). Thus as a threshold issue we must address the limitations period that applies to such a direct attack.

 If Congress does not supply an express statute of limitations regarding enforcement of a federal cause of action, courts must first look to state law for an analogous rule of timeliness. *Reed v. United Transp. Union,* 488 U.S. 319, 323, 109 S.Ct. 621, 624–25, 102 L.Ed.2d 665 (1989); *Posadas de Puerto Rico Assocs., Inc. v. Asociacion de Empleados de Casino de Puerto Rico,* 873 F.2d 479, 480 (1st Cir.1989). However, a narrow exception to this rule exists where adoption of a state statute of limitations would frustrate or hinder the carrying out of federal policy. *Reed,* 488 U.S. at 324, 109 S.Ct. at 625; *Posadas,* 873 F.2d at 480. *DelCostello* gives a two-factor test for determining when the exception applies:

[W]hen a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial

---

**12.** Noting that Local 959 had filed for bankruptcy and had obtained a stay of Patterson's suit against it during that time, Patterson also contends that Local 959 was an indispensable party, and that the limitations period thus was tolled for the duration of the stay. He is mistaken. Except in unusual circumstances, an automatic bankruptcy stay under 11 U.S.C. § 362(a) applies to the debtor alone and not to non-bankrupt co-defendants. *E.g., Cushman & Wakefield, Inc. v. Backos,* 129 B.R. 35, 36 (E.D.Pa.1991). Therefore, severance of the bankrupt defendant from non-bankrupt co-defendants is allowable unless the bankrupt defendant is indispensable to the action. *Id.* Patterson acknowledges this rule. He also acknowledges that in a hybrid § 301 action, neither the employer nor the union is typically an indispensable party in an action against the other, because generally the suit against the employer is for breach of the collective bargaining agreement, whereas the suit against the union is for breach of the duty of fair representation. *See Kaiser v. Local No. 83,* 577 F.2d 642, 644 (9th Cir.1978).

Nonetheless, Patterson contends that Local 959 is an indispensable party, because his claim

against Mat–Maid is not only for breach of the collective bargaining agreement, but also for conspiring with the union against Patterson. Patterson does not discuss why the union might be an indispensable party under Alaska Civil Rule 19 or the parallel federal rule. The sole authority on which Patterson relies is an unsupported dictum from *Kaiser* that an employer is not a participant in the union's breach of duty "unless, of course, the employee alleges that his union and his employer conspired against him." *Id.*

Patterson's arguments must fail. In order for one member of a civil conspiracy to be liable, not all members of the conspiracy need be named defendants or be joined as defendants. *E.g., U.S. Indus., Inc. v. Touche Ross & Co.,* 854 F.2d 1223, 1251 (10th Cir.1988); *Walker Distrib. Co. v. Lucky Lager Brewing Co.,* 323 F.2d 1, 8 (9th Cir.1963), *cert. denied,* 385 U.S. 976, 87 S.Ct. 507, 17 L.Ed.2d 438 (1966); *Non–Ferrous Metals, Inc. v. Saramar Aluminum Co.,* 25 F.R.D. 102, 104 (N.D.Ohio 1960); 16 Am.Jur.2d *Conspiracy* § 66 (1979).

lawmaking, we have not hesitated to turn away from state law.

462 U.S. at 172, 103 S.Ct. at 2294–95; *accord Reed*, 488 U.S. at 324, 109 S.Ct. at 625.

Applying such an analysis, the *DelCostello* court concluded that a six-month limitations period would be appropriate as to *both* union and employer in hybrid § 301 actions involving a union's breach of the duty of fair representation.[13] 462 U.S. at 155, 169–70, 103 S.Ct. at 2285–86, 2293–94. The Court contrasted the employee's claim with an action to vacate an arbitration award in a commercial context:

> The main difference is that a party to commercial arbitration will ordinarily be represented by counsel or, at least, will have some experience in matters of commercial dealings and contract negotiation. Moreover, an action to vacate a commercial arbitral award will rarely raise any issues not already presented and contested in the arbitration proceeding itself. In the labor setting, by contrast, the employee will often be unsophisticated in collective-bargaining matters, and he will almost always be represented solely by the union. He is called upon, within the limitations period, to evaluate the adequacy of the union's representation, to retain counsel, to investigate substantial matters that were not at issue in the arbitration proceeding, and to frame his suit. Yet state arbitration statutes typically· provide very short

times in which to sue for vacation of arbitration awards.

*Id.* at 165–66, 103 S.Ct. at 2291.[14]

However, Patterson's case presents a situation unanticipated in *DelCostello,* because here the state limitations period for challenging the arbitrator's award is potentially far longer than the six-month period borrowed in *DelCostello.* Alaska statutory law applies a ninety-day limitations period for a party to apply to the superior court to vacate an arbitration award. *See* AS 09.43.120(c). However, AS 09.43.010–.180 will not apply to a labor-management contract unless the contract expressly incorporates these provisions or another statute provides for their application. AS 09.43.010. Because the contract between Mat–Maid and Local 959 contains no provision directing the application of AS 09.43.010–.180, a ninety-day limitations period is inapplicable. *See, e.g., IBEW, Local Union 1547 v. City of Ketchikan,* 805 P.2d 340, 342 (Alaska 1991); *State v. Public Safety Employees Ass'n,* 798 P.2d 1281, 1284–85 (Alaska 1990). We have consistently urged legislative action on this matter, because no time limit exists at common law for challenges to an arbitration award. *See IBEW, Local Union 1547,* 805 P.2d at 342 n. 5; *Public Safety Employees Ass'n,* 798 P.2d at 1285 n. 7. However, the legislature has not yet responded.

Patterson's appeal presents a less difficult question. We must decide not the appropri-

---

**13.** Ordinarily, the federal statute of limitations for a motion to vacate, modify, or correct an arbitration award is three months after the filing or delivery of the award. 9 U.S.C. § 12. However, the federal arbitration statutes do not apply to contracts of employment, such as collective bargaining agreements, *see id.* § 1; *United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 40 n. 9, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987), and most of the federal circuits, including the Ninth Circuit, reject the limitations period found in 9 U.S.C. § 12. *See Harry Hoffman Printing, Inc. v. Graphic Communications, Int'l Union, Local 261,* 912 F.2d 608, 612–13 (2d Cir.1990) (summarizing case authority); *San Diego County Dist. Council of Carpenters v. Cory,* 685 F.2d 1137, 1141 (9th Cir.1982).

**14.** In contrast, if a *union* raises a suit directly challenging the arbitrator's award, so that no issue arises regarding the duty of fair representation, then the concerns raised in *DelCostello* are largely absent. Though the circuits are split as

to what limitations period is applicable, *see Posadas,* 873 F.2d at 482–84 (surveying the case law), the Ninth Circuit employs the state statute of limitations for challenges to arbitrators' decisions when unions seek to vacate them:

> The factors that led to the result in *DelCostello* have no parallel in the present case. [The union] does not claim that the arbitral process itself was flawed or distorted by the commission of an unfair labor practice. It does not seek relief that could not have been obtained in the arbitration proceedings themselves. It has been represented by counsel from the beginning, and does not question the quality of the representation.

*United Bhd. of Carpenters & Joiners Local 1020 v. FMC Corp.,* 724 F.2d 815, 817 (9th Cir.1984). At the same time, applying the state limitations period promotes the speedy adjudication of workplace grievances. *Posadas,* 873 F.2d at 483.

ate state limitations period for his action, but rather whether to apply a state limitations period or federal one. Our determination turns upon our long-standing view that "the parties to an agreement reached through arbitration should be able to proceed to implement the agreement without worry that it is subject to challenge months or years in the future," and that "[f]inality is an important consideration" in review of an arbitrator's decision. *Public Safety Employees Ass'n*, 798 P.2d at 1285 n. 7; *cf. City of Fairbanks Mun. Util. Sys. v. Lees*, 705 P.2d 457, 459–60 (Alaska 1985) (holding that courts do not review the merits of an issue submitted to arbitration, because "arbitration should be a final and binding means of dispute resolution, not a mere prelude to litigation"). We also note that where an employee's § 301 challenge to an arbitrator's decision required a choice between a state's ninety-day limitations period for challenges to arbitrators' decisions and the same state's six-year period for contract claims, the U.S. Supreme Court selected the shorter period, in part on the grounds that the system of industrial self-government, "with its heavy emphasis on grievance, arbitration, and the 'law of the shop,' could easily become unworkable if a decision ... could suddenly be called into question as much as six years later." *United Parcel Serv., Inc. v. Mitchell*, 451 U.S. 56, 58–59, 64, 101 S.Ct. 1559, 1561–62, 1564–65, 67 L.Ed.2d 732 (1981).[15]

■■ Taking the *DelCostello* and *Mitchell* decisions together, we hold that the statute of limitations for directly attacking the arbitrator's decision is the six-month period under federal law for hybrid § 301 claims. Patterson did not file his suit against the arbitrator's July 1986 award until 1988, well in excess of the six-month limitations period. We therefore conclude that Patterson failed to make timely his direct attack on the award.

**15.** The *Mitchell* court declined to reach the issue of whether to borrow a *federal* statute of limitations, because neither party raised the matter on appeal. *Id.* at 60 & n. 2, 101 S.Ct. at 1562–63 n. 2; *see also DelCostello*, 462 U.S. at 154 & n. 2, 103 S.Ct. at 2285 & n. 2.

## B. *Patterson's Defamation Claim*

■■ Patterson argues that there are genuine issues of material fact regarding an agreement not to re-publish Bevins' February 6, 1986 letter to Sinnett. Mat–Maid responds that the publication of the allegedly defamatory letter was privileged and that the privilege constitutes a complete defense.[16]

The Ninth Circuit has held that statements made by parties during the course of grievance proceedings conducted pursuant to the provisions of a collective bargaining agreement that is subject to the Labor Management Relations Act are absolutely privileged, as long as the statements are not published to individuals lacking legitimate interests in them:

Federal labor policy promotes the collective bargaining process as a means of stabilizing the relationship between employers and employees. It is "an effort to erect a system of industrial self-government." *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 580, 80 S.Ct. 1347, 1351, 4 L.Ed.2d 1409 (1960). Grievance procedures established by the [collective bargaining agreement] are crucial to maintaining that system. "[T]he grievance machinery under a collective bargaining agreement is at the very heart of the system of industrial self-government.... The processing of disputes through [that] machinery is actually a vehicle by which meaning and content are given to the collective bargaining agreement." *Id.* at 581, 80 S.Ct. at 1352.

To allow state defamation claims based on statements made in grievance proceedings would weaken the grievance system as a means of industrial self-government.

*Hyles v. Mensing*, 849 F.2d 1213, 1217 (9th Cir.1988).

Patterson asserted in his complaints that Bevins' February 6, 1986 letter was published on three occasions: (1) on February 6, 1986, when Bevins sent the letter to Sinnett;

**16.** Conceding that the State is immune from suit on the defamation claims, [At.R.Br. 6] Patterson pursues them against Mat–Maid alone.

(2) on June 23, 1986, when Mat–Maid introduced the letter into evidence at the arbitration proceeding; and (3) on certain unspecified dates and to unspecified recipients when "the contents of the letter [were] used when other employer[ ]s requested information regarding Mr. Patterson." On appeal, Patterson failed to provide briefing about the third occasion; thus we consider this point waived. *See Miles v. Miles,* 816 P.2d 129, 133 (Alaska 1991). On the second occasion, publication clearly was privileged under *Hyles. See* 849 F.2d at 1217. However, the first occasion presents a more complex issue. The collective bargaining agreement on which Mat–Maid relies did not go into effect until April 1986, after Bevins sent Sinnett the letter. The agreement was in effect at the time of Patterson's termination and at the arbitration hearing. Patterson thus contends that the grant of summary judgment on the absolute privilege issue was improper because "Mat–Maid has failed to establish that any [agreement] was in effect at the time of the initial publication by Bevins to Sinnett."

Mat–Maid's summary judgment motion relied solely on the April 1986 collective bargaining agreement. However, the arbitrator's decision states that before the collective bargaining agreement went into effect, Mat–Maid abided by an "employer implemented last offer agreement," which was dated November 18, 1983, and which Local 959 had never endorsed. Patterson did not address Mat–Maid's arguments at the summary judgment stage.

This evidence is sufficient for the summary judgment in favor of Mat–Maid to survive Patterson's appeal. If no union-management grievance resolution mechanism were in effect at all, then no need would have existed for Bevins' February letter to Local 959's representative. The implemented agreement clearly was a substitute for a collective bargaining agreement. The letter would constitute a type of informal grievance resolution, related to whatever agreement would be in force at the time of the actual termination and formal arbitration proceeding. Even though the letter from Bevins to Sinnett falls outside of formal grievance proceedings, its relationship with the grievance resolution process brings it within the scope of the privilege. *See General Motors Corp. v. Mendicki,* 367 F.2d 66, 70 (10th Cir.1966) (holding that absolute privilege extends to statements made in informal but customary conference, which occurred before formal hearing on grievance, and which the bargaining agreement did not mandate); *accord Hasten v. Phillips Petroleum Co.,* 640 F.2d 274, 276–77 (10th Cir.1981); *see also Green v. Hughes Aircraft Co.,* 630 F.Supp. 423, 427 (S.D.Cal. 1985) (allowing an absolute privilege for statements made to union representatives in a meeting prior to the initiation of disciplinary action). *See generally* Gary J. Spivey, Annotation, *Libel and Slander: Privileged Nature of Communication to Other Employees or Employees' Union of Reasons for Plaintiff's Discharge,* 60 A.L.R.3d 1081 (1974); Gary J. Spivey, Annotation, *Libel and Slander: Privileged Nature of Communications Made in Course of Grievance or Arbitration Procedure Provided for by Collective Bargaining Agreement,* 60 A.L.R.3d 1041 (1974).[17]

## IV. CONCLUSION

We AFFIRM the superior court's grant of summary judgment to Mat–Maid and the State on Patterson's wrongful termination claims. As for Patterson's § 301 collateral attack on the arbitrator's award, we conclude that it is barred by the applicable six-month period of limitations. Similarly, we conclude that Patterson's direct attack on the arbitrator's award was untimely and thus was barred.

---

**17.** In regard to Bevins' sending the February 6, 1986 letter to Sinnett in his capacity as an officer of Local 959, the collective bargaining agreement provides:

> Any dispute that arises between the employee and the Employer or any complaint or grievance on the part of both or one, said grievance, complaint, or dispute shall be submitted to the Local Union within thirty (30) days to be eligible to receive the assistance of the Local Union.

Given this provision, Bevins' letter to Sinnett can fairly be viewed as a publication in connection with " 'the entire proceeding contemplated by the provisions of the agreement for the grievance machinery,' " *Green,* 630 F.Supp. at 427 (quoting *Hasten,* 640 F.2d at 277), and thus is absolutely privileged.

We AFFIRM the superior court's grant of summary judgment to Mat–Maid on Patterson's defamation claims, since on the two occasions when Bevins' February 6, 1986 letter was published, such publication was absolutely privileged.

AFFIRMED.

BURKE, J., not participating.*

---

\* Justice Burke participated in oral argument but retired from the court before the opinion was rendered.