**J. E. FALTIN MOTOR TRANSPORTATION, INC., a corporation, Plaintiff,**

**v.**

**EAZOR EXPRESS, INC., a corporation, Defendant.**

**Civ. A. No. 16521.**

United States District Court
W. D. Pennsylvania.
April 10, 1959.

James P. Gill, Pittsburgh, Pa., for plaintiff.

Henry M. Wick, Jr., Delisi & Wick, Pittsburgh, Pa., for defendant.

MARSH, District Judge.

In this case, tried to the court without a jury, the plaintiff seeks to recover damages flowing from the defendant's alleged breach of a contract styled as a "Trailer Interchange Agreement".

The court makes the following:

Findings of Fact

1. Plaintiff is a corporation duly organized and existing under and by virtue of the laws of New Hampshire, and is a citizen of New Hampshire and the United States of America.

2. Defendant is a corporation duly organized and existing under and by virtue of the laws of Pennsylvania and is doing business in the City of Pittsburgh, Allegheny County, Pennsylvania. Defendant is a citizen of Pennsylvania and the United States of America.

3. The amount in controversy is a sum in excess of $3,000, exclusive of interest and costs.

4. On or about the first day of February, 1957, plaintiff and defendant, both of whom are engaged in the motor freight business, entered into a "Trailer Interchange Agreement" which provided for exchanges of trailers between the parties, under specified terms and conditions, for transportation over the several freight lines of the parties.

5. On or about July 3, 1957, and under the terms of the aforementioned "Trailer Interchange Agreement", plaintiff interchanged one of its trailers marked T87, being a 1956 Model 735MC-4D10 Strick aluminum closed top tandem semi-trailer, for a trailer owned by defendant and marked as No. 7231.

6. On the date of the interchange, plaintiff's trailer T87 was in good condition except for a small bruise on its front panel, which bruise did not materially affect the trailer's value.

7. The "Trailer Interchange Agreement" provides, in its pertinent parts, as follows:

"1. The undersigned carriers enter into this agreement governing their relationship with respect to interchange of trailers; provided however, that no provision in this contract shall be construed to increase the legal liability of any party hereto.

* * * * * *

"3. The carrier initially acquiring use of an interchanged trailer:

* * * * * *

"3.5 Agrees to hold the carrier initially furnishing the trailer harmless for any loss or damage thereto * * * arising out of the use, operation, maintenance or possession of said trailer, or arising from any other cause, until said trailer has been returned to the carrier initially furnishing it.

* * * * * *

"5. * * * In the event an interchanged trailer is damaged, * * * the carrier in possession at the time the damage occurred shall, by repair, restore it to the condition in which it was received, and in the event of failure of such carrier to make such repair, it shall nevertheless, be responsible for the cost thereof."

8. The parties to the action agreed that the law of Pennsylvania shall govern the disposition of the case.

9. While the aforementioned trailers were interchanged and on or about July 10, 1957, while the aforementioned "Trailer Interchange Agreement" was in full force and effect, a fire broke out in defendant's New Jersey terminal, which fire totally destroyed plaintiff's trailer No. T87, rendering said trailer valueless.

10. Plaintiff demanded that defendant replace or pay for said destroyed trailer, but defendant has upon all occasions refused and failed to do so.

11. The fair market value of plaintiff's trailer No. T87 at the time of its destruction by fire was $5,723.05.

Discussion

Plaintiff in this action urges that the provisions of ¶¶ 3.5 and 5, quoted above

impose upon the lessee carrier, in this case defendant, absolute liability for damages occurring to leased trailers while in the possession of the lessee. Defendant on the other hand contends that the contract is ambiguous in that ¶ 1 provides that the contract shall not be construed to increase the legal liability of any party, and, in the absence of ¶¶ 3.5 and 5, defendant would be liable for damages to trailers in its possession only in the event of defendant's negligence or deliberate act. Because of this supposed ambiguity, defendant argues that parol evidence may be introduced to show the intention of the parties and the meaning of the contract. Such evidence was admitted, over the objection of plaintiff, so that the court might have a complete record in the event that it reached the conclusion that an ambiguity existed. The evidence on the point was conflicting and otherwise unsatisfactory, but in the view we take of the case it becomes immaterial, for we find no ambiguity and no necessity for extrinsic evidence to aid in an interpretation of the contract.

A reading of the "Trailer Interchange Agreement" in the light of the standards of interpretation prevailing in Pennsylvania discloses a contract clear and unambiguous on its face. In reaching this conclusion, it is necessary to look to various standards of interpretation and their effect upon the contract here under consideration.

The first rule of interpretation to be considered is that "the writing will be read as a whole, and every part will be interpreted with reference to the whole * * *" Williston on Contracts, Revised Edition, § 618, Sub. 3. See also § 235(c), Restatement of the Law of Contracts and cases cited thereunder in the Pocket Supplement of Pennsylvania Annotations.

Next, we consider the rule that "the court will if possible give effect to all parts of the instrument and an interpretation which gives a reasonable meaning to all its provisions will be preferred to one which leaves a portion of the writing useless or inexplicable * * *" Williston on Contracts, Revised Edition, § 619. Language of similar effect is found at § 236(a), Restatement of the Law of Contracts. Minkoff v. McLean, 295 Pa. 396, 145 A. 534. Clearly, if defendant is correct in his contention that clause 1 of the contract limits the lessee's liability to that which it would bear in the absence of a written contract, then the provisions of clauses 3.5 and 5, quoted above, are of no effect, —nor, for that matter, would the provisions of other clauses, not here in dispute, be of any effect. It is, however, possible to give reasonable effect to all of the provisions of the instrument by deciding, as we do, that clause 1 is modified by each subsequent clause which does in fact increase the legal liability of either party over what it would be in the absence of the writing, and that no legal liability unless so increased by a specific subsequent provision may be construed to have been increased.

This view is fortified by § 236 (c), Restatement of the Law of Contracts which provides that "where there is an inconsistency between general provisions and specific provisions, the specific provisions ordinarily qualify the meaning of the general provisions", and by Williston who in § 619, supra, states that "where there is a repugnancy between general clauses and specific ones, the latter will govern". Harrity v. Continental-Equitable Title & Trust Co., 280 Pa. 237, 124 A. 493. Language even more appropriate to the instant case is found in Corbin on Contracts, § 547, which states:

> "If the apparent inconsistency is between a clause that is general and broadly inclusive in character and one that is more limited and specific in its coverage, the latter should generally be held to operate as a modification and pro tanto nullification of the former."

See Mutual Life Insurance Co. of New York v. Hill, 193 U.S. 551, 24 S.Ct. 538, 48 L.Ed. 783; Bock v. Perkins, 139 U.S. 628, 11 S.Ct. 677, 35 L.Ed. 314; Lauman v. Young, 31 Pa. 306.

Since we find no ambiguity, we must conclude from the plain language of the contract that defendant is liable for the damages suffered by plaintiff as a result of the destruction of its trailer while in defendant's possession; namely, the fair market value of plaintiff's trailer at the time of its total destruction. This measure of damages is adopted because of the total destruction of the trailer. In such event we feel it is implicit in the contract that damages should be so limited, since the cost of restoring the trailer "to the condition in which it was received" would be greater than the value of the trailer.

Plaintiff claims additional sums for loss of use and costs of investigation, but we feel that such claims cannot be sustained. The contract itself imposes the limit of damages recoverable by plaintiff to the cost of repairs to the damaged trailer. Since in the instant case the trailer was totally destroyed, it follows that defendant's liability is limited to the fair market value of the trailer, and there is no liability for loss of use. The costs of investigation claimed by plaintiff as an item of damages are not recoverable in this action. Those costs were incurred by plaintiff's insurer, a stranger to this action. Although plaintiff's insurer may be subrogated to plaintiff's rights against defendant, those rights could be no greater than plaintiff's, and plaintiff's right is limited to the repair costs mentioned above. Aside from this consideration, however, in the state of the record before us, since the insurer is neither a party to this action nor to the contract under consideration, its expenses cannot be considered in computing plaintiff's damages.

As to the value of the trailer destroyed, the evidence is widely conflicting. The trailer was purchased by plaintiff at a cost of $7,792.83 [1] on April 6, 1956 (Testimony, pp. 8–9, plaintiff's Exhibits 3, 4 and 5). Slightly more than fifteen months later, on July 10, 1957, the trailer was destroyed by fire, at a time when it was concededly in good condition. Plaintiff's insurance carrier paid Faltin $6,800; expert Santomo sets the fair market value at $3,500; expert McKelvey sets the fair market value at $5,743.45; [2] and, of course, the parties themselves placed widely divergent values on the loss. Of these various figures, the one submitted by McKelvey seems to be the most reasonable since it takes into consideration the normal depreciation rate of trailers and his personal experience during 1957 with appraisal of Strick trailers. The amount should be reduced, however, to reflect the absence of the spare wheel, leaving a net figure of $5,723.05.

Plaintiff, in its complaint, also demands interest from July 10, 1957, the date of the loss. As stated above, the contract required defendant, upon the occurrence of the loss, to restore the trailer by repair to the condition in which it was received or to pay the cost thereof. These performances are alternative and any obligation existing under general contract law to pay interest would ordinarily not arise immediately upon the happening of the event. Defendant would be liable at once to repair the damage and only on its failure to do so would it be liable to pay the costs of such repair. Defendant might decide, after reasonable effort or investigation, that repairs were not feasible, or that repairs by plaintiff would be more practical under the partic-

1. The testimony and exhibits indicate a total cost of $7,813.23; however, $20.40 of this cost represents a spare wheel. Plaintiff's Exhibit 6 which is the inspection report for trailer T87 made out upon its interchange to Eazor indicates that no spare wheel was present.

2. On January 19, 1959, the court heard testimony as to the value of plaintiff's trailer, at which time Santomo was the only witness. At the conclusion of his testimony, the parties agreed that they would submit written interrogatories on the issue to Santomo as well as to McKelvey, which interrogatories when filed were to be considered part of the record. In accordance with said agreement, the interrogatories and answers thereto were filed on February 9, 1959.

ular circumstances, in either of which events defendant would be justified in adopting its second alternative performance and no liability for interest would arise until the decision was reached or the repairs made. In the instant case, however, the trailer was largely reduced to melted aluminum and was obviously beyond repair. Defendant's duty to pay arose at that time and plaintiff was entitled to payment under the terms of the contract as of the date of the loss.

Having determined the date when defendant's performance became delinquent, there remains only a determination of plaintiff's right to interest under general contract principles. We find that the case at bar fits squarely into the language of § 337(a), Restatement of the Law of Contracts, together with comments d. and g. thereunder.[3] The value of defendant's performance having been proved by the evidence, plaintiff is entitled to interest from the date the right accrued.

Conclusions of Law

1. The court has jurisdiction of the parties and subject matter.

2. Defendant is liable to plaintiff under the terms of a "Trailer Interchange Agreement" for the damage to plaintiff's trailer while in defendant's hands.

3. Plaintiff is entitled to recover the sum of $5,723.05 with interest from July 10, 1957 and costs.

3. Section 337, in its pertinent parts, provides:

"§ 337. When Interest Is Recoverable as Damages.

"If the parties have not by contract determined otherwise, simple interest at the statutory legal rate is recoverable as damages for breach of contract as follows:

"(a) Where the defendant commits a breach of a contract to pay a definite sum of money, or to render a performance the value of which in money is stated in the contract or is ascertainable by mathematical calculation from a standard fixed in the contract or from established market prices of the subject matter, interest is allowed on the amount of the debt or money value from the time performance was due, after making all the deductions to which the defendant may be entitled.

* * * * *

"Comment:

* * * * *

"d. The fact that the defendant in good faith denies the existence of the debt or other duty asserted by the plaintiff, or denies that he has committed any breach of contract, does not prevent the allowance of interest as damages for his breach.

* * * * *

"g. Even though a contract does not itself specify the value of the performance that the defendant has failed to render, if that value can be determined by mathematical calculation from a standard fixed by the contract or from established market prices of the subject matter of the contract, interest is allowed on the amount so determined. This is true although the extent of the performance rendered and the existence of the market prices must be proved by evidence. The defendant had reason to foresee that a breach would deprive the plaintiff of the value determined by such a calculation."

Cf. Miller v. Robertson, 266 U.S. 243, 45 S.Ct. 73, 69 L.Ed. 265; Babayan v. Reed, 257 Pa. 206, 101 A. 339; where interest was allowed on wholly unliquidated damages.