Kyle SCHAUB, Appellant,

v.

K & L DISTRIBUTORS, INC., Appellee.

No. S–11186.

Supreme Court of Alaska.

June 24, 2005.

Thomas R. Lucas, Law Office of Thomas R. Lucas, Anchorage, for Appellant.

Jon T. Givens, Bankston, Gronning, O'Hara, Sedor, Mills, Givens & Heaphey, PC, Anchorage, for Appellee.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

*OPINION*

FABE, Justice.

## I. INTRODUCTION

Kyle Schaub sued K & L Distributors, Inc. for breach of contract after being terminated

for failing to notify his supervisor of his absence from three consecutive days of work, as required under the parties' collective bargaining agreement. The superior court granted K & L's motion for summary judgment, concluding that Schaub failed to exhaust his administrative remedies and was not excused from doing so. Because we conclude that Schaub's claim was time-barred, we affirm the superior court's order granting summary judgment to K & L without reaching the exhaustion of remedies question.

## II. FACTS AND PROCEEDINGS

### A. Facts

Kyle Schaub worked as a delivery driver for K & L Distributors pursuant to a collective bargaining agreement (CBA) between K & L and Teamsters Union Local No. 959 of the International Brotherhood of Teamsters. Schaub missed work due to medical problems for much of May and all of June and July before being terminated in July 2000.

The applicable collective bargaining agreement prevents K & L from discharging an employee unless the employee has received a written warning specifically stating the grounds for K & L's dissatisfaction.[1] The CBA requires that a doctor's slip be provided after the third consecutive day off. K & L's procedure requires that "[a]ll doctor's excuses need to be stamped with the time clock and deposited in the drop box provided. The excuses are due upon returning to work." In a letter of agreement between K & L and the Union, the absentee policy provides:

In the case of an absence, you are required to notify your immediate supervisor/management no later than one (1) hour before the start of your work day. Failure to notify your supervisor of your absence for three (3) consecutive days may be considered a voluntary quit. Extenuating circumstances for absence or tardiness will be considered on an individual basis. Re-

---

1. Article 6, section 6.04 of the CBA provides in part:

Except as provided in Section 6.05, there shall be no suspension or discharge unless the Employer has given the employee a previous written warning notice wherein facts forming the grounds of Employer dissatisfaction were clearly set forth.

peated absences or tardiness will result in written warnings or even termination.[2]

Schaub first visited his eye doctor in April 2000 because he was experiencing distortion and blind spots in his vision. At an April 17, 2000 appointment, his doctor informed him that he probably had a tumor behind his eye and referred him to an eye hospital in Florida. On April 30 Schaub arranged with K & L to take leave from May 15 until May 19 for his May 17 appointment in Florida.

Schaub was injured at work on May 4 but he continued to work. He then took a personal leave of absence from May 8–12. On May 12 Schaub saw Dr. Deleo about his May 4 work injury and Dr. Deleo determined that Schaub had a hernia. At the appointment, Dr. Deleo issued a work status report restricting Schaub's work to light lifting. Schaub provided the report to K & L that same day. Also on May 12, Schaub filled out a workers' compensation form for his May 4 injury.

At Schaub's May 17 appointment in Florida, the doctors determined that he did have a tumor behind his eye and Schaub underwent treatment on May 19. Schaub scheduled a follow-up appointment for May 24. Schaub called K & L and left a message for his supervisor, David McMullen, at 12:05 a.m. Alaska time on May 22 informing McMullen that he would be in Florida for the rest of the week. Then on May 23 Schaub spoke with someone at K & L and explained in detail why he was in Florida and that he would not be returning to Alaska for one to two weeks. On May 24 Schaub again attempted to speak with McMullen and left a message about his return from Florida.

On May 30 McMullen sent a letter to Schaub about his absence from work on May 22 informing Schaub that simply leaving messages did not mean that absences were approved. Schaub returned to Anchorage on June 3, 2000 and received the letter on June 5 but did not respond because he thought that he was unable to work due to the hernia.

On June 13 Schaub returned to Dr. Deleo who again detected a hernia and provided another work status report, which Schaub submitted to K & L. The work status report listed the same work limitations as the previous work status report and recommended that the limitations remain in effect until Schaub's appointment with another doctor on June 22. That night, a K & L dispatcher called Schaub to inform him that he was scheduled to work the next day. Schaub informed the dispatcher that he had just submitted a work status report that prevented him from performing warehouse work and asked the dispatcher to tell the night supervisor of his medical condition. Later that night, upon receiving a message from the night supervisor that Schaub would be fired if he did not show for work the next day, Schaub called and told the night supervisor about his medical restriction. Schaub told the night supervisor that McMullen was aware of his restriction and was informed that McMullen would be on vacation until June 19.

From June 19 until July 7, McMullen and Schaub left messages for each other but did not connect; in the messages Schaub informed McMullen about his return to Florida for follow-up on his eye. On June 20 K & L wrote Schaub a letter informing him that he was scheduled to do light work that accommodated his medical restriction on June 26. The letter was mailed on June 21. Although the letter does not indicate it, Schaub states that the only light work that K & L ever offered him was to operate a forklift, which was not permitted by his work status report.

Schaub saw another doctor on June 27 who did not detect a hernia but still recommended work restrictions for two more weeks before releasing Schaub to full activity. Schaub claims that he was not aware of the recommendation to release him to full activity. Dr. Deleo referred Schaub to a different doctor for a second opinion and an appointment was scheduled for July 6. The doctor did not detect a hernia at the July 6 appointment but, in a letter, recommended a light workout

2. Article 34, section 34.03 of the CBA provides in part: "A doctor's slip will be required after the third (3rd) consecutive day off." This letter of agreement maintained this policy, stating: "As stated in the Collective Bargaining Agreement, no doctor's slip will be required until the third (3rd) day of illness or injury in the event an employee elects to not go to a doctor."

and stretching program. Schaub claims that he never saw this letter.

On July 7 Schaub returned to Florida for his July 10 eye appointment. That same day, Schaub's father received McMullen's June 20 letter informing him that he was scheduled to do light work and read it to Schaub on July 8. Schaub claims that he was confused by the letter because McMullen apparently knew about his medical appointments; Schaub still thought that he had a hernia; Schaub was unaware of any warehouse work that satisfied the restrictions; and McMullen knew that Schaub was in Florida for his eye. Schaub also describes several conversations with an employee of the Alaska Teamsters Employer Service Corporation regarding his health insurance for his eye problem. The employee told Schaub that he was entitled to leave for his eye and that she would have a union business agent contact K & L's human resources department about the leave.

K & L terminated Schaub's employment by a letter dated July 19, 2000 because Schaub "fail[ed] to notify [his] supervisor of [his] absence for three (3) consecutive days." The letter treated Schaub's absence as a voluntary resignation. From July 10 through August 21, Schaub had various eye appointments for treatment and contact lenses. Upon Schaub's August 23 return to Alaska, Schaub received his final paycheck from K & L but claims he never received the July 19 termination letter.

Shortly after receiving his final paycheck, Schaub contacted the union and indicated that he wished to file a grievance. Although Schaub told two different business agents that he was not notified of his termination until August 23, they each informed him that his grievance was time-barred because the termination occurred on July 19. The union never filed a grievance on Schaub's behalf. Schaub did not return to work at K & L.

### B. Proceedings

Schaub filed a pro se complaint against K & L on July 31, 2002, alleging that he was wrongfully terminated. Schaub did not file suit against the union. K & L moved for summary judgment on January 6, 2003, arguing that K & L properly terminated Schaub due to his failure to report to work and that Schaub failed to exhaust his administrative remedies. Schaub opposed the motion. Superior Court Judge Peter A. Michalski granted K & L's motion for summary judgment on the ground that Schaub failed to exhaust his administrative remedies and was not excused from doing so.

Schaub filed a motion for reconsideration on May 16, 2003, arguing that he was excused from exhausting his administrative remedies. Upon the superior court's request, K & L filed an opposition to reconsideration on June 25, 2003. The superior court denied plaintiff's motion for reconsideration on July 21, 2003, determining that the union did not have "sole power under the contract to invoke the higher levels of the grievance procedure"[3] because Schaub could have filed a grievance report on his own and therefore was not excused from exhausting his remedies.

Although we disagree with the superior court's reasoning regarding Schaub's failure to exhaust his remedies, we conclude that Schaub's suit was time-barred. We therefore affirm the superior court's order granting summary judgment to K & L on this alternative ground.

## III. DISCUSSION

### A. Standard of Review

■ This court reviews a grant of summary judgment de novo and will affirm the summary judgment "if there are no genuine issues of material fact and if the moving party is entitled to judgment as a matter of law."[4] In reviewing a motion for summary judgment, we draw all reasonable inferences in favor of the nonmoving party.[5] We may

---

**3.** Quoting *State v. Beard (Beard III)*, 960 P.2d 1, 6 (Alaska 1998).

**4.** *Barry v. Univ. of Alaska*, 85 P.3d 1022, 1025 (Alaska 2004) (citations omitted); *see also* Alaska R. Civ. P. 56(c).

**5.** *See, e.g., Morgan v. Fortis Benefits Ins. Co.*, 107

affirm summary judgment on grounds not considered by the superior court.[6]

## B. Schaub's Claim Is a Federal Claim Arising Under Section 301 of the Labor Management Relations Act.

For cases involving private employers, claims that are founded directly on rights created by collective bargaining agreements and claims "substantially dependent upon analysis of a collective-bargaining agreement" are governed by § 301 of the Labor Management Relations Act.[7] The parties agree that § 301 completely preempts any state law cause of action for breach of a collective bargaining agreement.[8] Schaub's wrongful termination claim is predicated upon a breach of the collective bargaining agreement and is therefore governed by § 301.

K & L argues that Schaub's complaint does not state a cause of action under federal law and therefore does not state any claim upon which relief can be granted. But the fact that Schaub's pro se complaint does not mention a federal statute does not mean that it fails to state a federal claim. In *Caterpillar, Inc. v. Williams,* the United States Supreme Court noted that suits brought under § 301 are subject to complete preemption and observed that "once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law."[9] Here, both parties agree that Schaub's claim is governed by § 301. Although Schaub's complaint does not specifically refer to § 301, we conclude that the complaint asserted a federal claim from its inception.

## C. A Genuine Question of Material Fact Exists as to Whether Schaub Attempted To Exhaust His Remedies.

In its order granting summary judgment to K & L, the superior court found that Schaub had failed to exhaust his contractual and administrative remedies because "Schaub could have filed a Field Grievance Report himself; he could have asked the union Shop Steward to file a Field Grievance Report on his behalf; or he could've pressed the Union to file a grievance on his behalf." Because Schaub presented genuine issues of material fact as to his ability to file a grievance on his own, we conclude that the superior court's basis for granting summary judgment was erroneous.

It is well-settled law that an employee must attempt to exhaust exclusive grievance and arbitration procedures established by a collective bargaining agreement

P.3d 267, 269 (Alaska 2005).

6. *Marshall v. First Nat'l Bank Alaska,* 97 P.3d 830, 835 (Alaska 2004) (citation omitted).

7. *Caterpillar Inc. v. Williams,* 482 U.S. 386, 394, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987) (quoting *Int'l Bhd. of Elec. Workers, AFL–CIO v. Hechler,* 481 U.S. 851, 859 n. 3, 107 S.Ct. 2161, 95 L.Ed.2d 791 (1987) (internal quotation marks omitted)). Section 301 states in part:
 Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.
 Labor Management Relations Act of 1947 § 301, 29 U.S.C. § 185(a) (2000). Section 301 does not apply to public employers. 29 U.S.C. § 152(2) (2000); *see Casey v. City of Fairbanks,* 670 P.2d

1133, 1138 n. 7 (Alaska 1983); *see also* FEDERAL PROCEDURE, LAWYER'S EDITION § 52:2206 (John A. Glenn ed., 2001).

8. *See Franchise Tax Bd. v. Constr. Laborers Vacation Trust for S. Cal.,* 463 U.S. 1, 23, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983) ("[T]he preemptive force of § 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization. Any such suit is purely a creature of federal law, notwithstanding that state law would provide a cause of action in the absence of § 301.") (internal quotation marks omitted).

9. *Caterpillar,* 482 U.S. at 386–87, 393, 107 S.Ct. 2425. Actions arising under § 301 are controlled by federal substantive law even though brought in state court. *Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists and Aerospace Workers,* 390 U.S. 557, 559–60, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968); *Patterson v. State, Dep't of Agric.,* 880 P.2d 1038, 1042 (Alaska 1994).

before obtaining judicial review.[10] However, grievance procedures mandated by a collective bargaining agreement may prove unworkable when the employer repudiates the grievance procedures or when the union wrongfully refuses to process the grievance.[11] In the latter instance, "the wrongfully discharged employee may bring an action against his employer in the face of a defense based upon the failure to exhaust contractual remedies, provided the employee can prove that the union as bargaining agent breached its duty of fair representation in its handling of the employee's grievance." [12]

A prerequisite for this type of claim is that "the union has sole power under the contract to invoke the higher stages of the grievance procedure, and ... the employee-plaintiff has been prevented from exhausting his contractual remedies by the union's wrongful refusal to process the grievance." [13] K & L argues that Schaub could have filed his own grievance under the grievance procedures outlined in his collective bargaining agreement.[14] Schaub acknowledges that step one of the CBA grievance procedure would have allowed him to file a grievance on his own behalf, but argues that he did not have access to the appropriate form because the form was kept at the K & L offices and Schaub had already been terminated. Schaub also points out that the union had informed him that the grievance was time-barred and nobody informed him that he could file a grievance on his own. This factual question—that is, whether Schaub actually could have filed his own grievance—is sufficient to preclude summary judgment on the question of whether Schaub attempted to exhaust the grievance remedies outlined in his CBA, as required by *Vaca*. In addition, Schaub points to his various rejected requests that the union file a grievance as evidence that he did attempt to pursue a grievance. Drawing reasonable inferences in Schaub's favor, as required under our summary judgment standard,[15] the superior court could have concluded that Schaub pursued his grievance to the fullest extent possible.

Moreover, it is not clear what Schaub could have accomplished by filing the grievance without the cooperation of his union. In an order denying Schaub's motion for reconsideration, the superior court wrote of step one: "To move past the initial steps of the grievance procedure here, the grievance needed only to be filed—the result of filing would be an immediate mandatory meeting with the employee, his Union representative, and his immediate supervisor." But Schaub's collective bargaining agreement clearly requires union participation in steps two and three. Thus, even if Schaub had filed his own grievance, he could not have

---

**10.** *Vaca v. Sipes*, 386 U.S. 171, 184, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); *see also Beard III*, 960 P.2d at 5.

**11.** *Id.* at 185, 87 S.Ct. 903.

**12.** *Id.* at 186, 87 S.Ct. 903. The need to prove a union breach as part of a claim against an employer is why such claims are referred to as "hybrid claims." *See* discussion *infra* Part III. D.1. Our case law involving public employers and employees has rejected the rule of *Vaca v. Sipes*, 386 U.S. at 185, 87 S.Ct. 903, and does not require an employee to show that his union breached its duty to represent him fairly in a grievance procedure as a condition of suing his employer in court for wrongful discharge. *Casey*, 670 P.2d at 1138.

**13.** *Id.* at 185, 87 S.Ct. 903.

**14.** Article 8, section 8.02 of Schaub's collective bargaining agreement creates a three-step grievance procedure. Section 8.02 states:

**Step 1:** Employee grievances shall be taken up immediately between the aggrieved employee and the Union representative and the immediate supervisor. A grievance shall be considered untimely if not filed within ten (10) work days of when the employee had, or reasonably should have had, notice of the grievance. The time limits for grievances over terminations are twenty (20) work days as set forth in Section 6.06. Work days are defined as Monday through Friday, excluding Saturdays, Sundays, and holidays.

**Step 2:** If the grievance is not resolved within five (5) work days at Step 1, the Union may submit it in writing to a grievance panel consisting of two Union representatives and two Employer representatives. The panel must convene within ten (10) work days of submission of the grievance at this step.

**Step 3:** If the grievance is not resolved at Step 2, it may be taken to arbitration if either the Union or the Employer so requests.

**15.** *See Morgan*, 107 P.3d at 269.

moved beyond step one without the assistance of his union. Schaub's situation meets the requirement in *Vaca* that "the union has sole power under the contract to invoke the higher stages of the grievance procedure."[16]

■ If the superior court finds that an employee did not exhaust contractual remedies, the next step is to determine whether the employee was prevented from doing so by the union's wrongful refusal to process the grievance.[17] In *Vaca*, the Supreme Court observed the contradiction inherent in allowing a union's activities to excuse an employee from exhausting contractual remedies in a suit against the employer where the employer had no control over the union's actions. But the Supreme Court concluded that if the employer has committed a wrongful discharge, an employee should not be prevented by the union's breach from pursuing any remedies.[18] In its order denying Schaub's motion for reconsideration, the superior court found that Schaub did not satisfy this court's requirements for excusal from exhaustion, concluding that Schaub's union "did not act with bad faith, or in an arbitrary or capricious manner." The superior court also concluded that the union's refusal to file

Schaub's grievance could not constitute excusal because Schaub could have filed the grievance on his own. As discussed above, Schaub raised a genuine factual issue as to whether he could have filed his own grievance. We now examine what constitutes breach of a union's duty of fair representation.

■ Under the standard set forth in *Vaca*, "[a] breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith."[19] The *Vaca* standard presents a formidable challenge to employees, but the Supreme Court observed that the union in *Vaca* "might well have breached its duty had it ignored [the employee's] complaint or had it processed the grievance in a perfunctory manner."[20] The standard for determining when a union's unintentional mistake amounts to unfair representation is an evolving one,[21] and most courts require more than a mere showing that a union's handling of a grievance was perfunctory.[22] In one case involving employee discharges, the Ninth Circuit observed that unions must

---

16. *Vaca*, 386 U.S. at 185, 87 S.Ct. 903; *see also Beard v. Baum (Beard I)*, 796 P.2d 1344, 1349 (Alaska 1990).

17. *Id.*

18. *Id.; see also Beard III*, 960 P.2d at 10 (Rabinowitz, J., concurring).

19. *Id.* at 190, 87 S.Ct. 903 (citation omitted). Justice Rabinowitz described the general standard applicable to union breach cases as follows:
The standard which emerges from this fairly consistent line of cases is that a union's decision not to pursue an employee grievance is reviewed only for an abuse of discretion. A union's refusal to grieve constitutes a breach of duty only when it stems from an improper motive or lacks a rational basis. As the gatekeeper to arbitration, the union must be allowed to independently decide which claims are meritorious and should go forward. Judicial review is deferential.
*Beard III*, 960 P.2d at 12 (Rabinowitz, J., concurring).

20. *Id.* at 194, 87 S.Ct. 903; *see also Kollodge v. State*, 757 P.2d 1028, 1034 (Alaska 1988) (noting that "unions are obligated to expend at least a minimal amount of investigation and preparation of members' grievances").

21. *See Dutrisac v. Caterpillar Tractor Co.*, 749 F.2d 1270, 1272 (9th Cir.1983).

22. *See, e.g., Wilson v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL–CIO*, 83 F.3d 747, 753 (6th Cir.1996) (affirming summary judgment in favor of defendants because union representative's "handling of the grievance, while perhaps less than vigorous, was not 'hostile' "); *Reed v. Int'l Union of United Auto., Aerospace & Agric. Implement Workers of Am.*, 945 F.2d 198, 203 (7th Cir.1991) ("A union may act upon its reasonable interpretation of a labor contract; it need not prosecute a grievance that it honestly believes lacks merit."); *Lowrey v. Exxon Corp.*, 812 F.Supp. 644, 650 (M.D.La.1993) ("Neither negligence nor mistake in judgment is enough to support a claim that the union acted in an arbitrary or perfunctory manner."). Other courts have concluded that improper union motivation may not be required where perfunctory conduct is alleged and proved. *See, e.g., Dutrisac*, 749 F.2d at 1273 (concluding that "the union should be responsible for a total failure to act that is unexplained and unexcused"); *Ethier v. U.S. Postal Serv.*, 590 F.2d 733, 737 n. 3 (8th Cir.1979).

undertake some investigation of grievances brought to their attention but that the sufficiency of the union's actions will vary with each case.[23] The Ninth Circuit Court reasoned: "Although we afford unions a reasonable range of discretion in deciding how best to handle grievances, union conduct that shows an egregious disregard for the rights of union members constitutes a breach of the duty of fair representation."[24] The court also noted that the fact that employees had been discharged put an additional responsibility on the union, stating that "the Union needed to exercise special care in handling petitioners' grievance because they concerned discharges, the most serious sanction an employer can impose."[25]

▉ In this case, Schaub alleges facts indicating that the union may have misinterpreted the CBA when it refused to process his grievance, resulting in Schaub missing a grievance filing deadline that he otherwise could have met. Schaub testified in a deposition that his union informed him that it could not file his grievance because more than ten days had passed since his termination. Schaub also stated in an affidavit that he never received the July 19 letter terminating his employment and explained that he first learned of his termination when he received his final paycheck in late August:

> I returned to Anchorage on August 23, 2000. When I got my mail I received a final paycheck from K & L. I contacted the Teamsters Union within a day or two of my arrival and requested to file a grievance. The first Business Agent I spoke to . . . told me it was too late to file a grievance since I had been fired on July 19. I told him I knew nothing about being fired on July 19, that I only learned I had been terminated when I got home and had my final paycheck in the mail, on August 23. Another Business Agent, Mr. Trosper, told me the same thing—I could not file a grievance because it was too late. Although I requested a grievance to be filed, the union refused to do so.

Article 8, section 8.02 of Schaub's collective bargaining agreement allows an employee twenty work days from "when the employee had, or reasonably should have had, notice of the grievance" to file a grievance regarding a termination. Similarly, article 6, section 6.06 allows an employee twenty work days after a notice of termination to file a grievance.[26] When interpreting collective bargaining agreements, courts "will if possible give effect to all parts of the instrument and an interpretation which gives a reasonable meaning to all its provisions will be preferred to one which leaves a portion of the writing useless or inexplicable. . . ."[27] Applying this principle, we conclude that the "reasonably should have had notice" language in section 8.02 applies to section 6.06 as well.

▉ Federal case law and the collective bargaining agreement indicate that the twenty-day deadline for filing Schaub's grievance did not begin to run until Schaub received actual notice of his termination. In a case examining the timeliness of a written notice mailed by a union the day before Thanksgiving, resulting in late receipt of the notice, the Ninth Circuit observed that the general rule for written notice is that the intended recipient must receive actual notice.[28] The federal

---

23. *Tenorio v. NLRB*, 680 F.2d 598, 601–02 (9th Cir.1982) (holding that union's handling of grievance was inadequate because union did not attempt to learn about the circumstances leading to discharge); *see also Wilson v. Municipality of Anchorage*, 977 P.2d 713, 719 (Alaska 1999).

24. *Id.* at 601 (citations omitted).

25. *Id.* at 602.

26. Article 6, section 6.06 states: "If no grievance (protest) is filed, in writing, within ten (10) work days, excluding Saturdays, Sundays, and holidays, of the delivery of a warning notice or a notice of suspension, the misconduct alleged in the notice shall be taken as admitted and may not be contested as a fact in any subsequent grievance or arbitration proceeding. A grievance must be filed within twenty (20) work days of a notice of termination or the termination shall be considered final and not subject to the grievance and arbitration provisions of this Agreement."

27. 20 Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts § 55:20 (4th ed.2001) (quoting *J.E. Faltin Motor Transp., Inc. v. Eazor Exp., Inc.*, 172 F.Supp. 175, 178 (W.D.Pa.1959) (internal quotation marks omitted)).

28. *NLRB v. Vapor Recovery Sys. Co.*, 311 F.2d 782, 785 (9th Cir.1962).

appeals court wrote: "Where the giving of written notice is required by statute or contract and the manner of giving the notice is not specified, the general rule is that [there] must be personal service of the notice. However, it is sufficient to show that the party to be notified received actual written notice, the means employed being unimportant." [29] The court continued: "The power of termination of a contract of employment, or of any other continuing contract can be effectively exercised only by bringing home notice to the other party, not by merely mailing it to him." [30] Schaub's collective bargaining agreement states that the employee "will be asked to sign an acknowledgment of receipt" of the discharge. [31] This provision indicates that actual notice of the termination was required before the twenty-day deadline for filing a grievance began to run. [32] However, we need not reach the question of whether the union's handling of Schaub's complaint was perfunctory and its refusal to file a grievance wrongful under *Vaca* because we conclude that Schaub's claim is time-barred.

### D. Schaub's Claim Is Time–Barred Because a Six–Month Statute of Limitations Applies.

 In *DelCostello v. International Brotherhood of Teamsters*, the United States Supreme Court held that a six-month statute of limitations applies to "hybrid" claims in which an employee must prove both that the employer breached a provision of the collective bargaining agreement and that the union breached its duty of fair representation in order to prevail. [33] Schaub acknowledges that his claim is a hybrid claim but argues that it is subject to the three-year statute of limitations that applies to breach of contract claims under Alaska law. [34] Because Schaub's claim is hybrid, we conclude that the six-month statute of limitations adopted in *DelCostello* applies to this case.

### 1. Schaub's claim is a hybrid claim.

 If Schaub's claim were a straightforward suit under § 301 for breach of the collective bargaining agreement, the suit would be subject to the state statute of limitations for contract actions. [35] But the collective bargaining agreement in this case contains mandatory grievance and arbitration procedures in which Schaub's union must participate. As discussed above, in order to prevail in his suit against K & L, Schaub must demonstrate both that his discharge violated the collective bargaining agreement and that his union breached its duty of fair representation. [36] This makes Schaub's claim hybrid.

29. *Id.*

30. *Id.* (quoting 1 CORBIN ON CONTRACTS § 264 at 878, 879 (1950) (internal quotation marks omitted)).

31. Article 6, section 6.03. This section states in part: "A copy of each warning notice, notice of suspension, or notice of discharge shall immediately be delivered to the employee and to the shop steward and a copy forwarded to the Union. The employee will be asked to sign an acknowledgment of receipt of a copy of the warning, suspension, or discharge."

32. The "should have had notice" language in the CBA might be construed to require something less than actual notice. In light of the language requiring a signature acknowledging receipt, we conclude that the better interpretation of the CBA is that the "should have had notice" language is aimed at the situation where an employee ignores or fails to read a letter that has been received. *Cf. NLRB v. Gen. Teamsters Local No. 439*, 837 F.2d 888, 891 (9th Cir.1988) (observing that the NLRB does not require that a union have actual knowledge of an employee's resignation from the union before the resignation is deemed effective and noting a case where the NLRB held that "the failure of the union to pick up the letter until several days later should not affect the employee's right to resign").

33. 462 U.S. 151, 154, 165, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983).

34. *See* AS 09.10.053.

35. *Auto Workers v. Hoosier Cardinal Corp.*, 383 U.S. 696, 704–05, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966) (holding that state statute of limitations applied to union's § 301 suit against employer); *see also DelCostello*, 462 U.S. at 163, 103 S.Ct. 2281 (observing the "obvious and close analogy" between the type of suit in *Hoosier* and an ordinary breach of contract suit).

36. *See Vaca*, 386 U.S. at 186, 87 S.Ct. 903; *United Parcel Serv., Inc. v. Mitchell*, 451 U.S. 56, 62, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981); *see*

In *DelCostello*, the Supreme Court explained that a claim may be hybrid even when the employee chooses to sue only the employer or only the union.[37] The Supreme Court reasoned: "The employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both. The suit is thus not a straightforward breach of contract suit under § 301, as was *Hoosier*, but a hybrid § 301/fair representation claim...."[38] This is the situation in Schaub's case. As one court observed, "what makes a case a 'hybrid' action against both union and employer is the *nature* of the *claim*, not the identity of the *parties*."[39] In fact, Schaub acknowledges in his briefing that his claim is hybrid. Having determined that Schaub's claim is hybrid, we next examine whether his claim is subject to the six-month statute of limitations applied in *DelCostello*.

### 2. Schaub's case is subject to the six-month statute of limitations applied by the Supreme Court in *DelCostello*.

In *DelCostello*, the Supreme Court "borrowed" the six-month statute of limitations from § 10(b) of the National Labor Relations Act[40] and applied it to two cases in which employees sued both the employer and the union.[41] But the *DelCostello* Court made clear that the six-month statute of limitations applies to suits in which the employee sues only one party, so long as the claim is a hybrid claim.[42] Because Schaub's claim is hybrid, we conclude that it is subject to the six-month statute of limitations from *DelCostello*.

Schaub relies on our decision in *Quinn v. Alaska State Employees Ass'n*[43] to support his argument that Alaska's three-year statute of limitations for breach of contract actions applies to his claim. In *Quinn*, we observed that "when an employee only sues the employer for breach of a collective bargaining agreement, the state statute of limitation for contract actions applies."[44] However, this reasoning is subject to the caveat that the six-month statute of limitations from *DelCostello* applies to § 301 claims where the employee must prove that the union breached its duty of fair representation in order to prevail in the claim against the employer. In the *Quinn* opinion there is no discussion of whether Quinn's claims—for unpaid overtime and penalties—were subject to grievance procedures in the collective bargaining agreement; without such coverage there would be no duty to prove a union breach of its duty of fair representation.[45]

Schaub also argues that his case should not be controlled by *DelCostello* because it is analogous to other cases in which courts have applied state statutes of limitations to labor disputes. Schaub points to *Hoosier*, a case in which the United States Supreme Court held that a state statute of limitations applied to a suit brought by an employee against his employer under § 301 of the Labor Management Relations Act for breach of a collective bargaining agreement.[46] The *Hoosier* Court concluded that a uniform federal statute of limitations was not necessary for such cases, observing that "[t]he need for uniformity ... is greatest where its absence would threaten the smooth functioning of those consensual processes that federal labor law is chiefly

---

also *DelCostello*, 462 U.S. at 165, 103 S.Ct. 2281; *see also* discussion *supra* Part III.C.

37. *DelCostello*, 462 U.S. at 165, 103 S.Ct. 2281.

38. *Id.*

39. *Montgomery v. Nat'l R.R. Passenger Corp.*, 619 F.Supp. 1393, 1398 (D.Conn.1985).

40. 29 U.S.C. § 160(b) (2000).

41. *DelCostello*, 462 U.S. at 154–55, 103 S.Ct. 2281; *see also Patterson*, 880 P.2d at 1042–43.

42. *Id.* at 165, 103 S.Ct. 2281.

43. 944 P.2d 468 (Alaska 1997).

44. *Id.* at 473.

45. *Cf. Hoosier*, 383 U.S. at 705, 86 S.Ct. 1107 (holding that state statute of limitations applied to § 301 suit where there was no agreement to submit disputes to arbitration and the union, rather than the employee, brought suit); *Carbarga Cruz v. Fundacion Educativa Ana G. Mendez, Inc.*, 822 F.2d 188, 191–92 (1st Cir.1987) (applying state statute of limitations because there was no evidence that union breached its duty of fair representation and employee could prevail without proving that union breached its duty).

46. *Hoosier*, 383 U.S. at 705, 86 S.Ct. 1107.

designed to promote—the formation of the collective agreement and the private settlement of disputes under it." [47] Schaub argues that neither process is implicated in his case because he only contends that the union failed to file a timely grievance on his behalf.

But Schaub overlooks the fact that the *DelCostello* Court distinguished *Hoosier* on the ground that the claim in *Hoosier* was a straightforward suit against the employer, rather than a hybrid claim. [48] Unlike the claims in *DelCostello* and Schaub's claim in the instant case, the suit in *Hoosier* did not involve an agreement to submit disputes to arbitration. [49] Moreover, the union in *Hoosier* brought the suit, rather than the employee. [50] Therefore, the claimant in *Hoosier* did not need to prove a breach of the duty of fair representation on the part of the union in order to prevail against the employer. [51] The *DelCostello* Court reasoned that the application of the state statute of limitations in *Hoosier* was based on the "obvious and close analogy" between a straightforward § 301 suit and an ordinary breach of contract case. [52] The *DelCostello* Court rejected that analogy for hybrid § 301/fair representation claims, concluding instead that hybrid cases more closely resemble the situation presented by claims under § 10(b) of the National Labor Relations Act. [53]

Schaub attempts to distinguish his case from *Hines v. Anchor Motor Freight, Inc.* [54] and from *Vaca,* [55] earlier cases that the *DelCostello* Court indicated would have been good candidates for the six-month statute of limitations from § 10(b). [56] In *Hines,* the union took the employees' grievance through the arbitration process. [57] In *Vaca,* the union filed a grievance on behalf of an employee but failed to take the employee's grievance to arbitration. [58] Schaub contends that his case differs from the cases in *DelCostello, Hines,* and *Vaca* because Schaub's union never attempted to settle his dispute. But the *DelCostello* Court contemplated Schaub's situation when it decided to apply the six-month statute of limitations from § 10(b) rather than state limitations periods for vacating arbitration awards:

> Application of [a state] arbitration statute seems straightforward enough when a grievance has run its full course, culminating in a formal award by a neutral arbitrator. But the union's breach of duty may consist of a wrongful failure to pursue a grievance to arbitration, . . . or a refusal to pursue it through even preliminary stages. The parallel to vacation of an arbitral award seems tenuous at best in these situations; it is doubtful that many state arbitration statutes would themselves cover such a case in a commercial setting. [59]

Thus, the *DelCostello* Court contemplated cases similar to Schaub's when it chose to apply the limitations period from § 10(b) instead of state law to hybrid claims.

K & L points out that "[a]pplying a longer limitations period to hybrid claims involving a union that has declined to file a grievance would provide an incentive for unions to forsake the grievance processes to permit employees to bring separate suit and thereby make an end-run around the private procedures that federal labor law is intended to

---

47. *Id.* at 702, 86 S.Ct. 1107.

48. *DelCostello,* 462 U.S. at 162, 103 S.Ct. 2281; see also *Hoosier,* 383 U.S. at 699–701, 86 S.Ct. 1107.

49. *See Hoosier,* 383 U.S. at 696, 86 S.Ct. 1107.

50. *Id.* at 699, 86 S.Ct. 1107.

51. *See id.* For additional discussion of the Supreme Court's reasoning in *Hoosier, see DelCostello,* 462 U.S. at 164–65, 103 S.Ct. 2281.

52. *DelCostello,* 462 U.S. at 163, 103 S.Ct. 2281.

53. *Id.* at 165, 169, 103 S.Ct. 2281.

54. 424 U.S. 554, 571, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976) (holding that enforcement of arbitration decisions where arbitrator has erred "is conditioned upon the union's having satisfied its statutory duty fairly to represent the employee in connection with the arbitration proceedings").

55. *Vaca,* 386 U.S. at 174, 87 S.Ct. 903.

56. *DelCostello,* 462 U.S. at 163, 103 S.Ct. 2281.

57. *Hines,* 424 U.S. at 557, 96 S.Ct. 1048.

58. *Vaca,* 386 U.S. at 175, 87 S.Ct. 903.

59. *DelCostello,* 462 U.S. at 166 n. 16, 103 S.Ct. 2281.

encourage." An equally important policy consideration in this case is that declining to apply *DelCostello* would give claimants in Schaub's position an incentive to sue only one defendant in order to avoid application of *DelCostello's* six-month limitations period. We note that other courts examining this question have held that the six-month statute of limitations applies to all hybrid claims, regardless of whether the claimant sues the union, the employer, or both.[60] Courts that have declined to follow *DelCostello* have done so only when the cases are not hybrid claims or are not brought under the National Labor Relations Act.[61] For the reasons discussed above, we conclude that Schaub's claim is subject to the six-month statute of limitations that the Supreme Court established for hybrid claims in *DelCostello*.

■ The *DelCostello* Court did not specify when a claim accrues for purposes of the statute of limitations, and courts make this determination on a case-by-case basis.[62] In *Patterson*, we concluded that the limitations period for the employee's hybrid § 301/fair representation suit began running when the employee learned of the arbitrator's adverse decision.[63] We noted that in a suit against a union for breach of the duty of fair representation, the limitations period begins to run "when an employee knows or should know of the alleged breach of duty of fair representation by a union." [64] In Schaub's case, the outside date that the limitations period could have accrued was in October 2000, when Schaub met with union representatives who informed him that they would not file a grievance on his behalf. Schaub filed his

complaint in the superior court on July 31, 2002, more than a year and a half after his union refused to file his grievance. His claim is therefore barred by the statute of limitations.

## IV. CONCLUSION

Because Schaub's claim is time-barred by the six-month statute of limitations, we AFFIRM the superior court's order granting summary judgment to K & L.

---

**60.** *See, e.g., Livingstone v. Schnuck Market, Inc.,* 950 F.2d 579, 582 (8th Cir.1991) (applying six-month limitations period to hybrid suit where claimant sued only his employer); *McKee v. Transco Prod., Inc.,* 874 F.2d 83, 84 (2d Cir.1989) (same); *Conley v. Int'l Bhd. of Elec. Workers, Local 639,* 810 F.2d 913, 915 (9th Cir.1987) (applying *DelCostello* to suit where claimant sued only union); *Cole v. Pathmark of Fairlawn,* 672 F.Supp. 796, 806 (D.N.J.1987) (applying *DelCostello* to suit against employer only); *Mallory v. Ingersoll–Rand Co.,* 621 F.Supp. 1040, 1043 (W.D.Va.1985) (same); *Montgomery,* 619 F.Supp. at 1398 (same).

**61.** *See, e.g., Allen v. Hennepin County,* 680 N.W.2d 560, 564 (Minn.App.2004) (declining to

apply six-month statute of limitations to case brought under Minnesota's Public Employment Labor Relations Act); *Graham v. Quincy Food Serv. Employees Ass'n,* 407 Mass. 601, 612, 555 N.E.2d 543, 549 (1990) (declining to apply *DelCostello* to suit brought under Massachusetts state law).

**62.** *See Galindo v. Stoody Co.,* 793 F.2d 1502, 1509 (9th Cir.1986) (noting that an analysis of the accrual date "must focus on the context in which the claim arose").

**63.** *Patterson,* 880 P.2d at 1043.

**64.** *Id.* at 1043 n. 10 (quoting *Galindo,* 793 F.2d at 1509) (internal quotation marks omitted).